Geraldine HOLZEMER, Widow of Herman Holzemer, Deceased Employee, Relator,

v.

MINNESOTA MILK COMPANY, et al., Respondents.

No. 47403.

Supreme Court of Minnesota.

Oct. 28, 1977.

Petersen, Lyons, Tews & Squires and Gerald S. Duffy, St. Paul, for relator.

Cousineau, McGuire, Shaughnessy & Anderson and Robert J. McGuire, Minneapolis, for respondents.

## PER CURIAM.

Certiorari to review a decision of the Worker's Compensation Court of Appeals which determined that a distributor of dairy products was an independent contractor and not an employee of respondent Minnesota Milk Company at the time of his death in a traffic accident. We affirm.

The existence or nonexistence of an employment relationship is a question of fact and if reasonable inferences may be drawn to support either conclusion, the compensation court's finding must stand. *Edelston v. Builders and Remodelers, Inc.*, 304 Minn. 550, 222 N.W.2d 24 (1975); *Farnam v. Linden Hills Congregational Church*, 276 Minn. 84, 149 N.W.2d 689 (1967). The factors applicable in determining the question have been stated often, most recently in *Wangen v. City of Fountain*, Minn., 255 N.W.2d 813 (1977). They are: (1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge. Each case must be determined on its facts, but the most important of these factors is the right to control the means and manner of performance.

It is undisputed that decedent was an employee of the milk company for several years, during which he made home-to-home deliveries on a retail route in St. Paul. Early in 1975 the company decided to terminate its retail deliveries and offered to sell to the employee-drivers the routes they served and the trucks they drove. On March 31, 1975, decedent and the company entered a written contract under which he purchased his route, the accounts receivable for the customers on the route, and his truck. He agreed to pay the purchase price of $6,975 in 12 monthly installments, and the company agreed to furnish him the dairy products he would require. The parties also executed an agreement giving the company a security interest in the accounts receivable and the truck. The contract of sale specifically stated that the employer-employee status would cease and the relationship between the parties would be that of purchaser and seller. The contract also disclaimed any control by the company "of any functions as to time, routes, territory, terms, and other conditions." Decedent subsequently purchased part of another route under a similar contract.

The label the parties give their relationship is not determinative and their conduct in operating under the contracts is of primary significance. *Ossenfort v. Associated Milk Producers, Inc.*, Minn., 254 N.W.2d 672 (1977). The evidence of their conduct supports the determination that after April 1, 1975, the relationship between the parties was that of vendor and vendee. Cf. *Geerdes v. J. R. Watkins Co.*, 258 Minn. 254, 103 N.W.2d 641 (1960). There is no evidence that the company exercised any direct control over decedent's activities in selling dairy products to the retail customers. While relator argues that the company nevertheless retained control over decedent's activities because the contract of sale did not require it to sell him its products for a specific period of time, that fact alone is not conclusive. Indeed, both as a seller and a creditor, the company had an obvious interest in decedent's success as an independent distributor and it never refused to sell him its products.

The company continued wholesale distribution of its products after April 1, 1975, and permitted the former retail route drivers, who had delivered its products to some wholesale accounts on their routes prior to March 31, to continue to do so if they wished. Decedent continued to service

some of these accounts, but the record does not establish how often he did so. As before, the company set the prices for the products delivered to its wholesale customers and paid decedent a monthly commission for the products he delivered. It is clear that several elements characteristic of the employer-employee relationship inhered in this arrangement: The company controlled the price of the products decedent delivered and to whom he delivered them; it could have terminated decedent's servicing of these accounts at any time, and the commission he received can be viewed as the equivalent of wages. *Angell v. White Eagle Oil & Refinery Co.*, 169 Minn. 183, 210 N.W. 1004 (1926).

The compensation court did not determine the nature of the parties' relationship vis-a-vis the wholesale accounts, however, because it concluded that the record did not establish that decedent's death had arisen out of any business other than his retail selling business. The record would permit diverse inferences to be drawn on the issue of whether decedent was engaged in making wholesale deliveries at the time of his death. Consequently, the conclusion reached by the compensation court must stand since it is not manifestly contrary to the evidence. *Edelston v. Builders and Remodelers, Inc., supra; Nelson v. Lutheran Mutual Life Ins. Co.*, Minn., 249 N.W.2d 445 (1976).

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.