NORTH RIVER INSURANCE
COMPANY, Respondent,

and

Allen H. Brown, Involuntary
Plaintiff, Respondent,

Alfred H. Dressen, Involuntary Plaintiff,

v.

DAIRYLAND INSURANCE
COMPANY, Respondent,

Great Central Insurance Company,
Appellant.

No. C2–82–1526.

Supreme Court of Minnesota.

March 16, 1984.

Runchey, Louwagie & Wellman, Marshall, for appellant.

Gislason, Dosland, Hunter & Malecki, New Ulm, for respondent North River Ins.

Grose, VonHoltum, Sieben & Schmidt Ltd., Minneapolis, for respondent Allen Brown.

Miller & Neary, Minneapolis, for respondent Dairyland Ins. Co.

TODD, Justice.

Allen H. Brown was injured while combining on a farm owned by Alfred H. Dressen. He fell while alighting from a trailer owned by Dressen which was attached to a pickup truck owned by Raymond Appel. Brown sued Dressen alleging negligence and breach of contract. North River Insurance Company, which carried Dressen's farm liability coverage, accepted defense of the case. Subsequently, North River tendered the defense to Dairyland, insurer of Appel's truck, which declined. North River brought a declaratory judgment action against Dairyland and then amended the complaint to include Great Central, insurer of Dressen's vehicles. Dairyland and Great Central brought simultaneous motions for summary judgment.

The trial court made the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1) On or about July 13, 1977, Brown was injured while attempting to remove a tarpaulin from atop a four wheel agricultural trailer with a Dakon dump box mounted upon it. Brown was either standing upon the trailer as he worked with the tarpaulin, or attempting to get down from the trailer, when he fell and sustained personal injury for which he has brought a companion action in Lincoln County against Dressen. At the time of these events, the trailer was owned by Dressen and parked for the purpose of receiving grain custom harvested off Dressen's farmland. Dressen's agreement with the custom harvester required Dressen to provide a transport vehicle and haul the harvested crop to desired bin facilities. It was connected, at the time, by a "goose-neck hitch" (a form of hitch which mounts to a "fifth-wheel" attachment centered in the bed of a pickup type vehicle) to a pickup truck belonging to one Appel. Dressen had obtained the use of it by permission from Appel. At the time in question, the connected truck and trailer combination were parked on Dressen's premises. Both

Dressen and Appel are Minnesota residents.

2) At the time of these events, Dressen had farm liability insurance coverage with Plaintiff North River. North River concedes that its policy covers Dressen against liability to Brown and has undertaken the defense of the parallel action brought by Brown against Dressen in Lincoln County. However, Plaintiff North River brings this action to declare the liabilities of Defendant insurers as to the Brown claims against Dressen, asserting that both Defendants have in force applicable policies of insurance covering those claims as to which their coverage is primary to North River's secondary coverage.

3) On July 13, 1977, Appel's pickup truck was covered by a policy of insurance issued by Defendant Dairyland, its policy number 21 0379424. The policy declarations show Appel as named insured and describe his 1975 model one-half ton pickup. Its coverage obligates Dairyland, "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile, ....". Automobile is defined by the policy to mean, "... the motor vehicle or trailer described in this policy ...; (and) ... a trailer not described in this policy, if designed for use with a private passenger automobile, if not being used for commercial or business purposes ...."; and further provides that, "The term private passenger automobile means a private passenger, four wheel land motor vehicle designed for use principally upon public roads."

4) On July 13, 1977, Dressen also had in force two policies of insurance written by Defendant Great Central. The first, Great Central Policy # GA38257, describes a 1966 model Chevrolet Caprice, purposes of use "3–0", and a 1965 model Chevrolet one-half ton pickup, purposes of use "1A–0", showing Dressen as named insured as to each, in the policy declarations. The policy obligates Great Central to, "... pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury ... to which this insurance applies, caused by an occurrence and arising out of the ownership, maintenance or use, including loading and unloading, for the purposes stated as applicable thereto in the declarations, of an owned automobile....". The policy defines the term "insured" to include the "named insured", Dressen. It defines owned automobile to include, "... a trailer not described in this policy, if designed for use with a four wheel private passenger automobile and if not being used for business purposes with another type automobile; ....". Private passenger automobile is defined to mean, "... a private passenger or station wagon type automobile and any automobile the purpose of which is stated in the declaration as pleasure and business; ....". The term pleasure and business is defined to mean, "... personal, pleasure, family and business use.". Although the declarations form calls for purposes of use categories shown on the face of the form calls as either "P and B" (meaning pleasure and business) or "C" (meaning commercial), and that terminology is used in the policy, only the coded references "3–0" (as to the Chevrolet Caprice automobile) and "1A–0" (as to the Chevrolet one-half ton pickup), appear in the blank provided for that information.

5) On the same date, Dressen also had in force a second policy written by Defendant Great Central, its policy # 38256. That policy described only a 1970 model Buick Electra in the declarations showing purposes of use "3103". In all other respects, policy # 38256 contains the same provisions and terms as policy # 38257.

CONCLUSIONS OF LAW

1) Brown's injury was accidental in an occurrence and arose from, or was inci-

dental to, the Dressen trailer's use as a vehicle because he was "occupying" or "alighting from" it at the time of his injury within the meaning of *Minn.Stat. 1976,* Section 65B.43, Subd. 3. At the same time and place, the Dressen trailer was a "motor vehicle" within the meaning of Subd. 2 of said Section because connected to the Appel pickup. However, it did not thereby become *part of* the Appel pickup so as to bring it within the coverage of Dairyland's policy.

2) Defendant Dairyland's policy does not cover Dressen's trailer by its own terms. Dressen is not an insured under the policy because neither named in the policy nor using his own trailer with permission of Appel, the named insured, on July 13, 1977. It is unnecessary to determine whether the business use exclusion as to trailers under Defendant Dairyland's policy is invalid under Sections 65B.50; 65B.43, Subd. 2; and 65B.50, because only coverage of liability claims made against "insureds" are required provisions of the policy under Chapter 65B. Dressen was not an "insured" within the meaning of Defendant Dairyland's insurance policy by which Appel was provided the "plan of reparation" required of him concerning his pickup under the statute.

3) Defendant Dairyland's motion to dismiss should be granted, with prejudice.

4) On July 13, 1977, Appel's pickup was a "private passenger automobile" within the meaning of Defendant [Great] Central's policy # 38257 because an automobile of the type "pickup" listed in the declarations section of the policy for "pleasure and business" purposes of use within the meaning of the policy.

5) On July 13, 1977, Dressen's trailer was covered by Defendant's [Great] Central's policy of insurance # 38257 because then used by the named insured, Dressen, and, though then utilized for Dressen's business purposes, it was used with a four wheel private passenger automobile within the meaning of the policy.

6) As named insured under Defendant [Great] Central's policy # 38257, Dressen's liability to Brown is within the coverage of that policy.

7) [Great] Central's policy # 38256 does not cover Dressen's liability to Brown because the automobile described in the declarations section is not of a pickup type nor covered for personal and business use within the meaning of the policy.

8) On July 13, 1977, although the Dressen trailer was a motor vehicle within the meaning of Chapter 65B, no plan of reparation was required as to it because it is not necessary that it be "registered or licensed" in Minnesota, Section 65B.48. Coverage under policy # 38257 as to it therefore arises solely from the language and content of Defendant Great Central's policy.

9) Defendant Great Central's motion should be granted, as to policy # 38256, and denied, as to its policy # 38257.

10) Plaintiff's complaint against Defendant Dairyland, and against Defendant [Great] Central, as to Plaintiff's claim [Great] Central's policy # 38256 covers Brown's claims against Dressen, should be dismissed with prejudice.

From that part of the Order for Judgment determining that Great Central Insurance policy No. 38257 afforded coverage, defendant Great Central Insurance Company has appealed. Plaintiff/respondent North River Insurance Company seeks review of that portion of the Order granting defendant Great Central Insurance Company's motion for summary judgment and dismissal as to Great Central policy No. 38256; and that portion of the District Court's Order granting defendant Dairyland Insurance Company's motion for summary judgment and dismissing North River Insurance Company's action as to that policy of insurance. Further, North River Insurance Company seeks review of that portion of the trial court's Findings of Facts, Conclusions of Law and Order wherein the trial court failed to consider and decide the question of how risks should be apportioned among the named insurers.

Affirmed in part, reversed in part and remanded.

The issues on appeal are:

1. When does a trailer become a "motor vehicle" under the No-Fault Act?

2. Did the injuries arise out of the use and maintenance of a motor vehicle?

3. Which automobile policies attach to the risk?

4. Should the court apportion the risks?

■ 1. Great Central contends that Dressen's trailer is not a motor vehicle under the No-Fault Act. It relies upon the definition of trailer in the Uniform Motor Vehicle Accident Reparations Act (UM-VARA) § 1(a)(7)(ii), 14 U.L.A. 51 (1980).

Dressen's trailer clearly qualifies as a motor vehicle under the No-Fault Act. A trailer is a motor vehicle "when connected to or being towed by a motor vehicle." Minn.Stat. § 65B.43, subd. 2 (1982). Dressen's trailer was connected to Ray Appel's stationary pickup truck at the time of the accident. It is a motor vehicle within this definition.

Great Central argues that since the No-Fault Act contains no specific definition of trailer, one should look to UMVARA's definition. UMVARA states that a motor vehicle means "a vehicle, including a trailer, designed for operation upon a public roadway * * *." § 1(a)(7)(ii), 14 U.L.A. 51 (1980). Great Central concludes that since Dressen's farm trailer was not designed for operation upon a public roadway it may not qualify as a motor vehicle under the No-Fault Act.

Great Central's argument is flawed for two reasons. First, one may look to UM-VARA only when the statutory language is ambiguous. Minn.Stat. § 645.16(5) (1982). The statute defines trailer and projects no ambiguity. Hence, UMVARA may not be relied upon.

Second, even if UMVARA were applicable, Dressen's trailer would qualify as a motor vehicle. UMVARA requires a trailer to be designed for use upon a public roadway. Although Dressen's trailer was designed for moving grain, it was also designed for public roadway use in transporting grain between the fields and grain elevators. The trailer is rigged with lights, signals and brakes. The brakes are hydraulic and feed off the hydraulic line of the pickup. Thus, even under UMVARA's definition Dressen's trailer qualifies as a motor vehicle.

2. Great Central contends that even if Dressen's trailer constitutes a motor vehicle under the Act, Brown's injury did not arise out of the use or maintenance of a motor vehicle. Great Central cites the language of Minn.Stat. § 65B.43, subd. 3 (1982), which states that "[m]aintenance or use of a motor vehicle does not include * * conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying, entering into or alighting from it." Great Central concludes that Brown's injury occurred when he was loading or unloading the trailer.[1]

The trial court found that Brown was injured while attempting to remove a tarpaulin from the top of Dressen's trailer. It stated, "Brown was either standing upon the trailer as he worked with the tarpaulin, or attempting to get down from the trailer, when he fell and sustained personal injury * * *." This finding is not challenged, nor did any party allege that this was a genuine issue of material fact precluding summary judgment. Thus the issue is whether the trial court's legal conclusion is correct[2] that Brown's injury arose out of the use or maintenance of a motor vehicle.

Great Central contends that the case law requires the motor vehicle to be more than the mere situs of the injury. It argues

---

1. Interestingly, Great Central's policies both provide coverage for injuries arising from the loading or unloading of the vehicle. Since their policies provide coverage in excess of the minimum requirements of the Act, the loading/unloading discussion is unnecessary.

2. This is a legal conclusion, although *Haagenson v. National Farmers Union Property and Cas. Co.,* 277 N.W.2d 648, 651 (Minn.1979), suggests it is a question of fact.

that the motor vehicle must be an active accessory in causing the injury.

North River contends that at the time of the accident Brown was occupying the top of the trailer and attempting to remove a tarpaulin attached to the trailer. North River concludes that Brown was conducting an activity that was integral to the use of the trailer as a motor vehicle.

For an injury to arise out of the use or maintenance of a motor vehicle, "there must be some causal connection between the injury and the use of the vehicle for transportation purposes." *Waseca Mut. Ins. Co. v. Noska*, 331 N.W.2d 917, 920 (Minn.1983). The requisite connection between use and injury is "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *Tlougan v. Auto-owners Ins. Co.*, 310 N.W.2d 116, 117 (Minn.1981). The connection is established if "the injury is a natural and reasonable incident or consequence of the use of the vehicle." *Id.* The vehicle itself must be an active accessory to the injury sustained. *Holm v. Mut. Serv. Cas. Ins. Co.*, 261 N.W.2d 598, 603 (Minn.1977).

Our facts are similar to those in *Galle v. Excalibur Ins. Co.*, 317 N.W.2d 368 (Minn. 1982). *Excalibur* was a consolidated appeal. The plaintiff Standfield was employed as a truck driver, picking up and delivering freight on assigned city routes. Standfield had finished his route and parked his truck at the rear of the loading dock. He went to the rear of the trailer intending to open the door and retrieve his two-wheel dolly from inside. As the door opened a cable broke, jamming the door and causing Standfield to fall forward and injure himself. The court found coverage. It stated:

> We have no hesitation in finding [plaintiff's] * * * injury encompassed within the Act. He was injured by a part of the vehicle itself which malfunctioned when he was attempting to unload a piece of equipment from the rear of the truck.

*Id.* at 370.

The other appeal in *Excalibur* involved the plaintiff Galle who was injured when he attempted to lift a heavy box. Although he was also standing inside a stationary trailer, unloading cargo onto the loading dock, he was denied coverage. His injury occurred not because of the use of the vehicle but because of the nature of his employment. Professor Michael Steenson has analyzed these cases in the following way:

> The decisive factor justifying a finding of coverage in *Standfield* and a denial of coverage in *Galle* was the involvement of the motor vehicle. Standfield was injured by part of the vehicle itself when the cable broke and the door struck him. On the other hand, the involvement of the vehicles in *Galle* was, in effect, fortuitous * * *.

Steenson, *Minnesota No-Fault Automobile Insurance* 35 (1982).

Brown was injured either "as he worked with the tarpaulin, or [while] attempting to get down from the trailer, when he fell * * *." This is similar to the injury sustained by plaintiff Galle in *Excalibur* because he was injured by a part of the vehicle itself which malfunctioned or when he alighted from the vehicle. In either case the trailer was being used as a motor vehicle within the purview of the Act. Finally, under both of Great Central's policies loading and unloading is a covered event. The trial court did not err in finding that Brown's injury arose from the use or maintenance of a motor vehicle.

3. Dressen's trailer arguably was required to have insurance coverage under the No-Fault Act. Minn.Stat. § 65B.48, subd. 1 (1982). Although no factual finding was made, Dressen's trailer appears to have been principally garaged in this state. If this is the case, a plan of reparation security is compulsory. Thus, whether Dressen is covered by his automobile policies is dependent upon the language of those policies.

The trial court found coverage with respect to policy # 38257, which covered Dressen's 1966 Chevrolet Caprice and 1965 Chevrolet one-half ton pickup. The court

concluded that the policy language was ambiguous as to whether it extended liability coverage to Dressen's trailer. It construed it in favor of Dressen and permitted coverage. However, it denied coverage under policy # 38256, which has identical language.

Dressen's policies provide liability coverage for injuries which arise from the ownership, maintenance or use of an owned automobile. An owned automobile "includes a trailer not described in this policy, if designed for use with a four wheel private passenger automobile and if not being used for business purposes with another type automobile." Private passenger automobile is defined as "a private passenger or station wagon type automobile and any automobile the purpose of use of which is stated in the declaration as pleasure and business."

Apparently, the trial court reasoned that since the definition of "owned automobile" excluded the use of a trailer for business purposes, it conflicted with the definition of "private passenger automobile" which permits its use for pleasure and business.[3]

■ The court's reasoning with respect to the policy covering the 1970 Buick Electra is unclear. It stated that:

[Great] Central's policy # 38256 does not cover Dressen's liability to Brown because the automobile described in the declarations section is not of a pickup type nor covered for personal and business use within the meaning of the policy.

Neither the trial court nor the policy provides a clue as to what the code in the purposes section of the policy means. It lists a number—"3103". Since the policy language is identical to the policy under which coverage was found, and the purposes section is similarly ambiguous, it ap-

pears the trial court erred in not finding liability coverage with respect to this policy.

A second reason why the policy is ambiguous, requiring construction against the insurer and a finding of coverage, is the definition of owned automobile. That definition states:

"Owned automobile" includes a *trailer* not described in this policy, if designed for use with a four wheel *private passenger automobile* and if not being used for business purposes with another type *automobile* (emphasis added).

This definition provides coverage for a trailer up to the point when it is being used for business purposes with "another type automobile." What "another type automobile" is, is unclear. Automobile is not defined in the policy. It arguably could be a pickup or an automobile not specified on the declarations page. Because this clause is undefined and ambiguous, it should be construed against the insurer to provide liability coverage.

■ Although we conclude there was coverage under all three of Dressen's insured vehicles, it makes no difference in the action. Liability coverage follows the vehicle and not the person and there can be no stacking of liability coverage. *See Koons v. National Family Ins. Co.,* 301 N.W.2d 550, 553 (Minn.1981).

■ The trial court found there was no coverage under Appel's policy issued by Dairyland. We disagree. Appel's policy of insurance defines insured as:

the named insured and * * * *any person while using the automobile* and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or *with the per-*

---

**3.** The trial court noted that the declarations page had a code which indicated to the insured whether the policy covered pleasure and business or commercial. The legend is limited to these categories. The code used in the purposes column is undefined in the policy. The trial judge inquired of counsel as to what those codes meant. "1A" was listed by the pickup and indi-

cated "strictly private passenger purposes." This, the court reasoned, was close to the pleasure and business language in the policy. The trial court felt it was unfair for the insurer to change the language in the policy and substitute the codes which are undefined. Thus, the court construed these ambiguous provisions in favor of the insured.

*mission of either and within the scope of such permission* (emphasis supplied).

The trial court erroneously stated that since Dressen could not use his own trailer with the permission of Appel that there was no coverage under the policy. Clearly, Dressen was using Appel's truck with his permission. Dressen had liability coverage under that policy for injuries arising from the use or maintenance of the truck. Thus the question is whether Appel's policy covered Dressen when he towed a trailer. Trailer is defined as:

> Trailer—a trailer not described in this policy, if designed for use with a private passenger automobile, if not being used for commercial or business purposes * *.

This language would seem to preclude coverage since the trailer was being used for commercial purposes. However, language in the insuring agreement also provides:

> "IV. (d) Two or more automobiles. When two or more automobiles are insured hereunder, the terms of the policy shall apply separately to each, *but a motor vehicle and a trailer or trailers attached thereto shall be held to be one automobile as respects limits of liability under coverages A and B*" (emphasis supplied).

Here, we have held that when the trailer became attached to the pickup truck it was a motor vehicle under our statute. The pickup truck was an automobile under the policy. There is a considerable portion of the policy devoted to the definition of and the coverage afforded trailers. The language of the insuring agreement seems in conflict with other language in the policy. Since Dairyland chose the language of the policy, ambiguities must be resolved against it. *Nordby v. Atlantic Mut. Ins. Co.*, 329 N.W.2d 820, 822 (Minn.1983). We conclude that since there is only single coverage afforded the pickup-trailer combination, there is no basis to enforce the exclusionary language of the policy dealing only with trailer coverage.

4. The trial court did not address the issue of apportionment of risk. We re-mand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.