The ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Respondent,

v.

Terri Lee SPARROW, Appellant,

Anthony Erickson, Respondent.

No. C2–85–651.

Court of Appeals of Minnesota.

Nov. 19, 1985.

Review Denied Jan. 23, 1986.

under a commercial auto insurance policy. We reverse in part.

## FACTS

On June 20, 1982, Sparrow and her sister were loading a concession wagon owned by their brother Anthony Erickson in preparation for taking the wagon to the Grand Rapids fairgrounds for a community celebration. The wagon had two axles and four wheels, and the concession wagon was hitched to a Jeep Gladiator, also owned by Anthony Erickson. The jeep and wagon were parked alongside a Taco John's Restaurant owned by Anthony Erickson.

Sparrow noticed that some paper napkins on a hot plate inside the wagon were smouldering. As she attempted to remove the napkins, they burst into flames and ignited fumes leaked from either a loose propane gas fitting or from a gasoline can in the wagon that had a cloth inserted in the spout for a cap. Sparrow was severely burned.

Both the Jeep and the concession wagon were covered by a commercial auto policy issued by St. Paul Fire and Marine to Anthony Erickson. Sparrow brought a negligence action for the personal injuries she received and St. Paul responded with this declaratory action.

The trial court found no coverage because Sparrow was an employee of the insured, and thus precluded by an employee exclusion. The court further found that the fire did not arise out of the maintenance or use of a motor vehicle, thereby precluding recovery under the no fault benefits of the policy. Finally, the court determined that the trailer involved in the fire did not constitute an uninsured motor vehicle under the policy, thereby precluding Sparrow from recovering uninsured motorist benefits under the policy. Sparrow appeals.

Charles B. Bateman, Duluth, for St. Paul Fire and Marine Ins. Co.

Richard C. Smith, Minneapolis, for Terri Lee Sparrow.

Clarance E. Hagglund, Minneapolis, Carver Richards, III, Virginia, for Anthony Erickson.

Heard, considered and decided by FOLEY, P.J., and FORSBERG and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Terri Lee Sparrow appeals the trial court's judgment that no coverage existed

## ISSUES

1. Was Terri Lee Sparrow an employee of Anthony Erickson, the insured, so as to trigger the employee exclusion and pre-

clude Sparrow from recovering under the liability coverage?

2. Did the fire in the concession wagon arise out of the maintenance and use of a motor vehicle for purposes of determining Sparrow's right to no fault benefits?

3. Was Sparrow entitled to claim benefits under the uninsured motorist coverage of the policy?

## ANALYSIS

### Scope of Review

Generally, the scope of review on appeal is governed by the "clearly erroneous" standard. *See* Minn.R.Civ.P. 52.01 ("Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses"). Respondent Anthony Erickson, who claims Sparrow was not his employee, argues, however, that in this case review should be de novo because the trial court's findings were based entirely on written evidence.

The Minnesota Supreme Court has determined that a different standard of review applies when the trial court relies solely on documentary evidence as the basis for its decision.

> Where * * * the critical evidence is documentary, there is no necessity to defer to the trial court's assessment of the meaning and credibility of that evidence. We have in some cases deferred to the trial court's findings upon such evidence * * We think the better rule is that articulated by Judge Jerome Frank in *Orvis v. Higgens*, 180 F.2d 537, 539 (2 Cir.1950): " * * * Where a trial judge sits without a jury, the rule varies with the character of the evidence: (a) If he decides a fact issue on written evidence alone, we are as able as he to determine credibility, and so we may disregard his finding. * * * "

*In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225–226, 243 N.W.2d 302, 305 (1976) (citations omitted).

■ In the present case, the trial court based its decision on a stipulation of facts, depositions, and other documentary evidence, including a statement by Anthony Erickson that was submitted to the trial court in both its taped and written forms. Thus, "[i]nsofar as the trial court's determinations are based upon documentary evidence, this court may review them de novo, but to the extent that they depend upon a resolution of testimonial conflicts, the 'clearly erroneous' standard applies." *Merriman v. Sandeen*, 267 N.W.2d 714, 717 (Minn.1978) (citing *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 225, 243 N.W.2d 302, 305 (1976). From this, we conclude this court is free to make its own determinations.

## I.

The liability insurance policy issued by St. Paul for the concession wagon/trailer excluded employees of the insured.

■ Whether an employment relationship exists is a question of fact, and five factors are utilized in resolving the question. *Holzemer v. Minnesota Milk Co.*, 259 N.W.2d 592, 593 (Minn.1977). In order to determine whether a person is an employee or an independent contractor, courts look at the right to control the means and manner of performance; the mode of payment; the furnishing of materials or tools; the control of the premises where the work is done; and the right of the employer to discharge. *Id.* at 593. The most important factor is the right to control the means and manner of performance. *Id.*

*A. The Right to Control the Means and Manner of Performance.*

Sparrow argues that Erickson had no control over the activities of the concession wagon. Sparrow selected the fairgrounds for the June 20th commitment, and Erickson was out of the state on that date. Sparrow also notes that she could stock the wagon with supplies from any source; she was not restricted to purchasing needed items from Erickson's Taco John's. Further, Sparrow argues that Erickson imposed no method of bookkeeping, Sparrow

was free to choose her own hours, and Erickson gave no directions and had no plan to inspect Sparrow's work.

In contrast, St. Paul points out that Erickson permitted Sparrow and her sister to work on the stand prior to June 20 "so they could get the feel of it" and so that he could supervise and show them how to operate the stand.

### B. Mode of Payment.

In her deposition, Sparrow testified that she, Erickson, and her sister agreed to a loose payment arrangement in which profits would be split. She stated that a minimum wage was never discussed. Erickson confirmed this arrangement in his deposition testimony. He stated in a recorded statement, however, that he "expected to pay [Sparrow] a minimum."

### C. The Furnishing of Materials or Tools and Control of Premises.

Sparrow acknowledges that Erickson furnished the jeep and the concession wagon. Previously, however, Erickson had permitted one Wally Johnson prior use of the wagon with Erickson and allowed him to receive a share in the profits, an obvious non-employment relationship. Erickson agreed to advance products to Sparrow but Sparrow was free to obtain supplies from any source. The wagon contained no Taco John's advertising and Erickson did not plan to supervise operations while the concession stand was at the fair.

St. Paul counters that Erickson built and owned the concession trailer thus precluding a finding that the parties were engaged in a joint venture. St. Paul further argues that the concession trailer was in fact a part of the Taco John's business owned by Erickson and his wife that supplied most of the items Sparrow was going to sell at the fair.

There was a dispute as to whether Taco John's personnel ever worked in the concession wagon.

### D. The Right of the Employer to Discharge.

Sparrow argues that neither Sparrow nor Erickson could discharge the other. St.

Paul asserts that Erickson clearly had the right to hire and fire Sparrow and the other Taco John's employees that worked at the stand.

■ Based on the above facts, the trial court concluded that Sparrow was an employee of Erickson. We disagree. The facts do not exhibit an employment relationship, but rather a loose arrangement within a family allowing a member, Sparrow, to use the concession wagon to earn some money. The requisite control for an employer-employee relationship doesn't exist. Sparrow selected the fairgrounds, could make her own decisions regarding where to purchase supplies, and she and her brother agreed to split the profits.

## II.

The concession wagon was an insured vehicle under the commercial auto policy issued by St. Paul. A trailer is a motor vehicle when connected to or being towed by a motor vehicle. Minn.Stat. § 65B.43, subd. 2 (1985). Basic economic loss benefits are available for injuries "arising out of the maintenance or use of a motor vehicle." Minn.Stat. § 65B.44 (1985). Subdivision 3 of section 65B.43 further provides as follows:

"Maintenance or use of a motor vehicle" means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it. Maintenance or use of a motor vehicle does not include * * * conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying, entering into or alighting from it.

Minn.Stat. § 65B.43, subd. 3 (1985). The trial court found that the accident did not arise out of the maintenance or use of a motor vehicle because the accident was unrelated to the use of the trailer as a medium of transportation. Rather, the fire occurred in connection with the concession stand's use as a restaurant. Accordingly, the trial court denied no fault benefits.

■ In order for an injury to arise out of the maintenance or use of a motor vehicle, a causal connection between the injury and the use of the vehicle for transportation purposes must be present. *North River Insurance Co. v. Dairyland Insurance Co.*, 346 N.W.2d 109, 114 (Minn.1984). The required connection is " 'something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury.' " *Id.* at 114 (citation omitted). The connection is established when the injury is a natural and reasonable consequence of the use of the vehicle. *Id.* (citation omitted).

Sparrow claims the fire in the concession wagon was a natural and reasonable incident and consequence of the use and maintenance of the vehicle.

St. Paul argues the accident occurred out of the use of the trailer as a restaurant, and, therefore, the trailer was the mere situs of the injury.

■ St. Paul is correct. This case is similar to *Tlougan v. Auto-Owners Insurance Co.* in which the Minnesota Supreme Court found a pick-up cab to be the mere situs of injury when a five year old child was burned while playing with matches. *See Tlougan v. Auto-Owners Insurance Co.*, 310 N.W.2d 116, 117 (Minn.1981). *See also Engeldinger v. State Automobile and Casualty Underwriters*, 306 Minn. 202, 236 N.W.2d 596 (1975) (court found that death did not arise out of the use of the car, "but rather that the automobile was a mere instrument, receptacle, or situs of the primary negligence of the insured"). We find that the fire did not arise out of the maintenance or a use of a motor vehicle under the no fault laws.

### III.

Sparrow's final argument is that if she is found to be an employee of Erickson, then she is entitled to benefits under Erickson's uninsured motorist coverage. Because of our finding of no employment relationship, we do not address this issue.

**DECISION**

The record does not sustain the trial court's finding that Terri Lee Sparrow was an employee of Anthony Erickson. Injuries received from fire in a concession wagon that is hitched to a jeep do not arise out of the maintenance and use of a motor vehicle.

Reversed in part.

FORSBERG, Judge, dissenting:

I respectfully dissent. The findings of the court of an employer-employee relationship is amply supported by the evidence.

First of all, there is evidence of control of performance. Prior to the accident, Erickson showed Sparrow and her sister how to operate the stand. They had worked at the stand while he supervised before he let them operate it on their own. The fact that some decision-making authority was delegated to Sparrow is not inconsistent with an employment relationship.

Secondly, Erickson's statement of December 9, 1982 evidences a wage arrangement with a possibility of commissions, rather than a profit-splitting arrangement necessary for a joint venture:

Q. Was Terri and (sic.) be on an hourly wage rate then or how was her arrangement?

A. Well, I just told her I expected to pay her a minimum and then I thought maybe if she worked as hard, made a lot of money well then I would give her some of the profit.

Q. Okay, so if I understand you right then up to this June 20, 1982, incident then she was paid by the hour and not on commission or anything like this?

A. Right, no up until then there would have been no commissions I suppose after she got doing it full time, she would have had a chance to make more than an hourly wage and that's what she was intending on doing.

Another factor to be considered is the furnishing of tools or materials. Most of the materials were furnished by Erickson,

as the owner of the Taco John's. In his statement, Erickson said that all of the meat and paper products used by the stand came from the restaurant. There was no separate accounting between Taco John's and the concession stand. Bills against the stand were paid out of the "take" or by a Taco John's check.

Also there is evidence of control of the trailer by Erickson. The trial judge was presented with conflicting documentary testimony by Erickson. Erickson stated at his deposition that Sparrow had arranged to have the trailer at the community event. In his earlier statement, he maintained that he had made the fairgrounds arrangements himself. The statement was made about six months after the event, while the deposition was taken later. Erickson alone retained title to the trailer. As pointed out by the trial court, this fact tends to negate Sparrow's claim of joint venture. Because Erickson was the sole owner, he had the power to control the premises. He exercised that control by delegating authority to Sparrow. It should be noted that Erickson has an interest in the outcome of this case because of his relationship to Ms. Sparrow (brother and sister) who seeks compensation.

Based upon well-recognized considerations of witness credibility, particularly the interest in the outcome of the case, the relationship to the parties and the opportunity to remember facts, the trial court found the earlier statement more credible.

As to the right to discharge, the trial court justifiably found that Erickson reserved the power to terminate Sparrow's use of the trailer because he was the sole owner of the trailer.