*This opinion is nonprecedential except as provided by
Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0882**

Jhonathan J. Robinson,
Appellant,

vs.

Robert R. Amos, et al.,
Respondents.

**Filed June 10, 2024
Affirmed in part, reversed in part, and remanded
Bratvold, Judge**

Hennepin County District Court
File No. 27-CV-22-18106

Jhonathan J. Robinson, Brooklyn Park, Minnesota (pro se appellant)

Bradley A. Kletscher, Tyler W. Eubank, Barna, Guzy & Steffen, Ltd., Minneapolis, Minnesota (for respondents)

Considered and decided by Bratvold, Presiding Judge; Johnson, Judge; and Cleary, Judge.[*]

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

Appellant challenges the district court's dismissal of his complaint with prejudice

under Minn. R. Civ. P. 12.02(e) for failing to state a claim upon which relief can be granted.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Appellant's handwritten complaint alleges that respondents misrepresented the parties' work relationship by stating in an "employment contract" that appellant was a "contractor" who worked for an "employer" and then later asserting that appellant was an "independent contractor." We conclude that the allegations in the complaint are sufficient to state claims for misrepresentation of employment relationship, fraudulent misrepresentation, and whistleblower retaliation. But we also conclude that the complaint fails to state claims for defamation and intentional infliction of emotional distress. Thus, we affirm in part, reverse in part, and remand.

**FACTS**

The following summarizes the factual allegations in the complaint served on respondents Cornerstone Remodeling Group, LLC and Robert R. Amos. When helpful to understanding the issues on appeal, these facts also summarize documents referenced in the complaint, including a contract, job posting, and 1099 form.

In response to a posting on Indeed.com, appellant Jhonathan J. Robinson applied for a job as a carpenter to do residential remodeling for Cornerstone. Robinson had two interviews with Amos, owner of Cornerstone. They signed an "employment contract" (the contract) on September 30, 2020. The contract stated that Robinson was a "contractor" in a "temporary position" with an end date of November 20, 2020, and that Cornerstone was the "employer." Under the contract, Robinson had to "successfully complete a probationary period of 60 days" and, during this period, he would "receive a 1099 Form for the compensation paid," was "responsible for income taxes and Social Security payments," and would not receive benefits.

2

Robinson was paid via checks issued in the account name, "Restoration Properties LLC," and signed by Amos. After completing the probationary period, Robinson asked whether he would be hired. Respondents extended the contract for 30 days. Robinson then "became concerned he was not going to be hired" and "looked into" the contract "more in depth."

Robinson "notified" Amos that he believed respondents had violated Minn. Stat. § 181.032 (Supp. 2023)—which requires employers to provide an earnings statement to each employee at the end of a pay period.[1] Robinson also notified Amos that he "was misclassified as an independent contractor." On December 10, 2020, Robinson and Amos discussed Robinson's concerns. Amos stated that Robinson was "classified as an 'independent contractor'" and that respondents "did not withhold taxes to avoid paying employer-related taxes such as social security [and] unemployment." Amos "suggested that [Robinson] refrain from working until he made a decision [about] how he wished to proceed with [his] employment."

On December 11, Robinson "received his last check." That same day, Robinson requested "the truthful reason for his termination," and respondents, via their attorney, stated that Robinson "was his own business and left the employment because of lack of work." Robinson's complaint asserts that this reason is "false," alleging that, in the job posting on Indeed.com, respondents stated that they "have some larger projects coming up

---

[1] We cite the most recent version of Minn. Stat. § 181.032 because it has not been amended in relevant part. *See* 2023 Minn. Laws ch. 53, art. 12, § 1, at 90; 2023 Minn. Laws ch. 59, art. 1, § 4, at 2.

3

down the road." The complaint also alleges that, three months after Robinson was terminated, respondents posted another job listing for a carpenter to do residential remodeling.

On December 8, 2022, Robinson served a complaint alleging five claims: (1) fraudulent misrepresentation under Minn. Stat. § 268.182 (2020); (2) misrepresentation of employment relationship under Minn. Stat. § 181.722 (2022)[2]; (3) whistleblower retaliation under the Minnesota whistleblower act (MWA), Minn. Stat. § 181.932 (Supp. 2023)[3]; (4) defamation under Minn. Stat. §§ 181.933 (2022), 609.765 (2020); and (5) intentional infliction of emotional distress (IIED). Respondents answered and moved to dismiss under Minn. R. Civ. P. 12.02(e). Robinson opposed dismissal, arguing that respondents made "no compelling arguments disputing [his] complaint." Robinson also contended that respondents did not comply with the requirements for serving their motion to dismiss.

After a hearing, the district court issued an order granting respondents' motion to dismiss, determining that Robinson's complaint failed to allege facts sufficient to state a claim for relief. First, as to Robinson's fraudulent-misrepresentation claim, the district court concluded that Robinson "has no authority to bring criminal claims" under Minn.

---

[2] This statute was amended during the 2024 legislative session. 2024 Minn. Laws ch. 127, art. 10, § 7. Because the amendment does not become effective until July 1, 2024, we cite the 2022 version of Minn. Stat. § 181.722.

[3] The 2023 amendment to Minn. Stat. § 181.932 prohibits additional actions by employers. 2023 Minn. Laws ch. 53, art. 11, § 26, at 71. Because the amendment does not relate to or affect Robinson's claim, we cite the most recent version of the statute.

Stat. § 268.182, respondents "were clear" that they were hiring a "contractor," and the complaint failed to allege pecuniary damage and did not meet the "more detailed factual pleading threshold in claims involving fraud." Second, regarding Robinson's claim for misrepresentation of employment relationship, the district court determined that "[t]here is nothing in the record suggesting that [respondents] misrepresented anything about the position" to Robinson and, "[i]ndeed, [respondents] highlighted the 1099 information in the job posting."

Third, as to Robinson's whistleblower claim, the district court stated that the complaint "admits that [respondents] suggested [Robinson] take some time to decide if he wanted to continue work" and "alleges no facts beyond [Robinson's] own conclusion" to support the contention that he was terminated. Fourth, relating to Robinson's defamation claim, the district court concluded that the complaint did not "identify what statements [respondents] made to the IRS or anyone else" and did not "plead how [Robinson] has been damaged, as unspecified potential tax liability is not a valid damage." And fifth, regarding Robinson's claim for IIED, the district court determined that the complaint's allegations were "facially insufficient to successfully plead a count of intentional infliction of emotional distress."

Robinson appeals.

## DECISION

Appellate courts "review the allegations of a complaint subject to dismissal under Rule 12.02 de novo." *Halva v. Minn. State Colls. & Univs.*, 953 N.W.2d 496, 500 (Minn.

5

2021). Appellate courts "must accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party." *Id.* (quotation omitted).

Under Minn. R. Civ. P. 12.02(e), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." "A claim is sufficient against a motion to dismiss for failure to state a claim if it is possible on any evidence which might be produced, consistent with the pleader's theory, to grant the relief demanded." *Walsh v. U.S. Bank, N.A.*, 851 N.W.2d 598, 603 (Minn. 2014). "A pleading will be dismissed only if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." *DeRosa v. McKenzie*, 936 N.W.2d 342, 346 (Minn. 2019) (quotation omitted). "[A] court may consider documents referenced in a complaint without converting the motion to dismiss to one for summary judgment." *N. States Power Co. v. Minn. Metro. Council*, 684 N.W.2d 485, 490 (Minn. 2004) (emphasis omitted).

In his brief to this court, Robinson urges this court to reverse the district court's dismissal of his complaint under rule 12.02(e).[4] We first consider Robinson's argument that respondents improperly served their motion to dismiss. We then address Robinson's arguments about each of his five claims.

---

[4] Robinson's brief to this court makes three arguments that we decline to address: (1) that, before serving his complaint, Robinson received ineffective assistance of counsel, which led Robinson to proceed pro se; (2) that the IRS and the Minnesota Department of Labor failed to assist Robinson; and (3) that "discovery has not yet been conducted." These arguments are not supported by legal analysis or citation. Thus, we decline to address them. *See Ganguli v. Univ. of Minn.*, 512 N.W.2d 918, 919 n.1 (Minn. App. 1994) (declining to address allegations unsupported by legal analysis or citation).

**I.      Robinson's claim that respondents failed to properly serve their motion to dismiss lacks merit.**

Robinson argues that respondents "failed to comply with Minn. R. Civ. P. 5.04" because their motion to dismiss "was not accompanied by a 'certificate of service' as described in rule 5.04(b)." Robinson made this argument in response to respondents' motion to dismiss, but the district court did not address it, and respondents' brief to this court does not analyze the issue.

Rule 5.04(b) provides:

> All documents after the complaint required to be served upon a party, together with a certificate of service specifying the details of how and when service was accomplished and signed under oath or penalty of perjury by the person effecting service, shall be filed with the court within a reasonable time after service . . . .

Minn. R. Civ. P. 5.04(b).

We note that Robinson does not claim that respondents failed to serve him with the motion to dismiss. Robinson instead claims that respondents failed to serve him with a certificate of service for their motion to dismiss. "When interpreting rules of procedure, we look first to the plain language of the rule," and "[w]here the language is plain and unambiguous, that plain language must be followed." *In re Welfare of Child of R.K.*, 901 N.W.2d 156, 160 (Minn. 2017) (quotation omitted). The plain language of rule 5.04(b) and the comments to the rule indicate that a certificate of service need not be served on a party. Rule 5.04(b) states that "all documents after the complaint required to be served upon a party, together with a certificate of service . . . shall be filed with the court." Minn. R. Civ. P. 5.04(b). The advisory-committee comments to rule 5.04(b) state that it

7

"require[s] that proof of service be provided . . . by filing a separate certificate of service." Minn. R. Civ. P. 5.04(b) 2020 advisory comm. cmt. Because rule 5.04(b) provides that a party must file the certificate of service with the court and does not state that the party must serve it on another party, Robinson's argument is unavailing.

## II. Robinson's complaint alleges facts sufficient to state a claim for misrepresentation of employment relationship.

Robinson argues that his complaint states a claim for misrepresentation of employment relationship because it alleges that respondents made "clear and blatant misrepresentations" that are actionable under Minn. Stat. § 181.722, subds. 1, 2.[5] Respondents argue that Robinson "failed to allege any misrepresentation" and "failed to allege any damages" and that his "claim is time barred" under the two-year statute of limitations.

The district court rejected Robinson's claim for misrepresentation of employment relationship because "nothing in the record suggest[s] that [respondents] misrepresented anything about the position to [Robinson], any government entity, or other employees." The district court discussed only subdivision 1 of section 181.722, the misrepresentation-of-employment-relationship statute. Robinson's complaint, however, alleges misrepresentation of employment relationship under section 181.722, subdivisions 1 and 2. We address both subdivisions, beginning with subdivision 2.

---

[5] Section 181.722, subdivision 4, creates a civil action for damages in favor of a construction worker who is "injured" by a violation of the statutory section. A construction worker is defined as "any laborer or member of a trade who is employed in the building or construction industry and who is engaged in, but not limited to, any of the following occupations: carpenters . . . ." Minn. Stat. § 179.254, subd. 3 (2022).

8

## A. Subdivision 2

Minnesota Statutes section 181.722, subdivision 2, provides that an employer may not "require or request any employee to enter into any agreement, or sign any document, that results in misclassification of the employee as an independent contractor or otherwise does not accurately reflect the employment relationship with the employer." Minn. Stat. § 181.722, subd. 2.

Five factors determine whether a worker is an employee or independent contractor: "(1) The right to control the means and manner of performance; (2) The mode of payment; (3) The furnishing of materials and tools; (4) The control of the premises where the work is done; and (5) The right of the employer to discharge." *Unzen v. City of Duluth*, 683 N.W.2d 875, 881 (Minn. App. 2004), *rev. denied* (Minn. Oct. 27, 2004). Whether a worker is an independent contractor or an employee is a question of fact. *Holzemer v. Minn. Milk Co.*, 259 N.W.2d 592, 593 (Minn. 1977). Evidence that an employer controls the means and manner of performance tends to prove an employment relationship. *Hammes v. Suk*, 190 N.W.2d 478, 481 (Minn. 1971). "[T]he furnishing of materials and tools by the employer" is also evidence of an employment relationship. *Id.*

Robinson's complaint alleges that he "is not an 'independent contractor'" because respondents controlled his "time and place of work, all duties to be performed, and provided [him] with company tools." The complaint also alleges that respondents "drafted [the] contract," which Robinson signed, and "intentionally misclassified" him "as an 'independent contractor,'" denying Robinson "his rights as an employee such as company

9

benefits, sick/vacation leave, increase in pay, increase in promotion, any 401K that may have been offered, and any other benefits provided by the employer."

Because the complaint alleges that respondents controlled the time and place of Robinson's work and provided tools for his work, the complaint states allegations sufficient to support Robinson's claim that he was an employee and that respondents required him to sign a contract misclassifying him as an independent contractor, as section 181.722, subdivision 2, prohibits.

### B.    Subdivision 1

Minnesota Statutes section 181.722, subdivision 1, provides:

> No employer shall misrepresent the nature of its employment relationship with its employees to any federal, state, or local government unit; to other employers; or to its employees. An employer misrepresents the nature of its employment relationship with its employees if it makes any statement regarding the nature of the relationship that the employer knows or has reason to know is untrue and if it fails to report individuals as employees when legally required to do so.

Minn. Stat. § 181.722, subd. 1.

The complaint alleges that respondents "intentionally misclassified [Robinson] as an 'independent contractor'" and "did not withhold taxes to avoid paying employer-related taxes," Robinson received a 1099 form for "wages earned," and Robinson suffered damages. As discussed above, the complaint alleges facts that tend to prove Robinson was an employee. Because we must take these alleged facts as true at this stage of the proceedings, we conclude that the complaint sufficiently states a claim that respondents

misrepresented the nature of Robinson's employment relationship as prohibited by section 181.722, subdivision 1.

## C.    Claim Not Time-Barred

Respondents argue that the district court properly dismissed Robinson's claim for misrepresentation of employment relationship because it is barred by the statute of limitations. Robinson argues that his claim is timely because the complaint alleges that respondents' conduct was willful. The district court did not rule on this issue, but we may nonetheless consider respondents' argument because respondents preserved the issue below and advanced it as an alternative ground for affirmance. *Day Masonry v. Indep. Sch. Dist. 347*, 781 N.W.2d 321, 329-32 (Minn. 2010).

Minnesota Statutes section 541.07(5) (2022) prescribes a two-year limitation period for actions "for the recovery of wages or overtime or damages, fees, or penalties accruing under any federal or state law respecting the payment of wages or overtime or damages, fees, or penalties," *except* "if the nonpayment is *willful* and not the result of mistake or inadvertence, the limitation is *three* years." (Emphasis added.)

The parties agree that the statute of limitations under section 541.07(5) applies to Robinson's misrepresentation-of-employment-relationship claim. We therefore assume without deciding that Robinson's claim is for wages, damages, fees, or penalties as defined by section 541.07(5).

Robinson's complaint alleges that respondents "*intentionally* misclassified" him as an independent contractor, denying him "a full job opportunity" and benefits, and "did not withhold taxes to avoid paying employer-related taxes." (Emphasis added.) Because the

11

complaint alleges that respondents intentionally denied Robinson the benefits of being an employee, Robinson's claim was timely under the three-year limitation period in section 541.07(5).

We conclude that Robinson's complaint sufficiently states a claim for misrepresentation of employment relationship and that the district court erred by dismissing his claim.

### III. Robinson's complaint alleges facts sufficient to state a claim for fraudulent misrepresentation.

Robinson argues that the district court erred by dismissing his claim for fraudulent misrepresentation under Minn. Stat. § 268.182. Respondents argue that "there was no misrepresentation related to the job posting because the job posting expressly stated that the position was for 1099 contract employment" and that "there were no damages."

The district court first noted that section 268.182 is a criminal statute and that Robinson "has no authority to bring criminal claims." The district court next assumed that Robinson's fraudulent-misrepresentation claim relied on common law. The district court dismissed the common-law fraud claim, determining that the "job posting state[d], in bold letters, that [it was] a '1099 position'" and that "a '1099 position' refers to an independent contractor position." The district court noted that, "[e]ven if there was some ambiguity in the job posting," Robinson failed to meet the "more detailed factual pleading threshold in claims involving fraud."

Minnesota Rule of Civil Procedure 9.02 requires that "the circumstances constituting fraud or mistake . . . be stated with particularity." To meet the particularity

requirement, a plaintiff must "plead[] facts underlying each element of the fraud claim." *Hardin Cnty. Sav. Bank v. Hous. & Redev. Auth.*, 821 N.W.2d 184, 191 (Minn. 2012). We assume, as the district court did, that Robinson's fraud claim relies on common law. A claim for fraudulent misrepresentation has five elements: (1) the defendant made a false representation of a past or present material fact (2) with knowledge that the representation was false and (3) with the intention to induce reliance on the misrepresentation; (4) the representation caused such reliance by the plaintiff; and (5) the plaintiff suffered pecuniary damage as a result. *Hoyt Props., Inc. v. Prod. Res. Grp., LLC*, 736 N.W.2d 313, 318 (Minn. 2007).

The district court accurately summarized the contract, which states that Robinson is a "contractor," that Cornerstone is an "employer," and that Robinson will receive a 1099 form, must pay his own taxes, and will not receive benefits. The job posting stated that "[t]his is a 1099 contract position" and that it "does NOT come with benefits at this time since it is a 1099 contract opportunity." As discussed above, the complaint alleges that Robinson was an employee, not an independent contractor, that respondents "willful[ly]" and "intentionally" misclassified him as an independent contractor, and that he was denied an "increase in pay," among other benefits.

At this stage in the proceedings, we must take the allegations in the complaint as true. *Halva*, 953 N.W.2d at 500. We conclude that these allegations are sufficient to state a claim that respondents fraudulently misrepresented that Robinson's position was for an independent contractor.

13

Robinson also argues that the district court erred by dismissing his claim for fraudulent misrepresentation because respondents paid his wages "through a separate business" different from the one named in the contract. Respondents argue that it "is unclear how paying [Robinson] through a checking account belonging to another entity amounts to fraud" or "how this is a misrepresentation" on which Robinson relied or that damaged him. The district court did not address these allegations in its dismissal order.

Robinson's complaint alleges that his contract was "fraudulent" because Restoration Properties LLC issued the checks paying his wages even though he signed a contract with Cornerstone. Robinson's 1099 form lists the payor as Restoration Properties LLC d/b/a Cornerstone Remodeling Group, indicating that Cornerstone is the assumed name of Restoration Properties LLC. *See Black's Law Dictionary* 499 (11th ed. 2019) (defining "d/b/a" as an abbreviation preceding a business's assumed name that "signals that the business may be licensed or incorporated under a different name"). Thus, the complaint fails to state a claim for fraudulent misrepresentation related to the entity paying Robinson's wages.

**IV. Robinson's complaint alleges facts sufficient to state a claim under Minnesota's whistleblower act.**

Robinson urges that the complaint sufficiently alleges facts showing that respondents terminated his employment because he "notified" respondents that they were violating a law. Respondents argue that they "did not terminate" Robinson and that the complaint "says nothing of any actions by [respondents] to terminate the relationship."

14

The district court determined that Robinson's complaint "allege[d] no facts beyond his own conclusion that he was terminated—wrongfully or otherwise"—and dismissed Robinson's whistleblower claim. The district court noted that Robinson "*himself* admit[ted] that [respondents] suggested he take some time to decide if he wanted to continue work" and that the complaint pleaded no facts supporting Robinson's contention that he was terminated.

The MWA prohibits an employer from retaliating or discriminating against an employee who, "in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law . . . to an employer." Minn. Stat. § 181.932, subd. 1. The elements of an MWA claim are "(1) statutorily protected conduct by the employee, (2) an adverse employment action by the employer, and (3) a causal connection between the two." *Coursolle v. EMC Ins. Grp., Inc.*, 794 N.W.2d 652, 657 (Minn. App. 2011) (quotation omitted).

The MWA protects an employee from retaliation. Minn. Stat. § 181.932, subd. 1. An employee is defined as "a person who performs services for hire in Minnesota for an employer. Employee does not include an independent contractor." Minn. Stat. § 181.931, subd. 2 (2022). Because Robinson's complaint alleges that he was "not an 'independent contractor,'" we will assume that he may offer evidence he performed services for hire such that the MWA applies. *See Halva*, 953 N.W.2d at 500 (stating that appellate courts must accept the facts alleged in the complaint as true).

Robinson's complaint alleges that he informed respondents that he believed they misclassified him as an independent contractor and violated Minnesota law requiring an

15

employer to provide each employee with an earnings statement at the end of the pay period. Robinson and Amos "held a discussion about . . . [Robinson's] concern[s]," and Amos informed Robinson that he was "classified as an 'independent contractor'" and "suggested that [Robinson] refrain from working until he made a decision [about] how he wished to proceed with [his] employment." The next day, Robinson "received his last check." Robinson's complaint alleges that he was "terminated after reporting possible violations of Minnesota laws."

Respondents challenge the second required element, arguing that the complaint fails to allege adverse action. Respondents point out that the complaint alleges that all communications between Robinson and respondents were by text message, but "none of the text messages between the parties show any adverse action on the part of respondents." Indeed, Robinson's complaint alleges that "[a]ll communications" between the parties "were via text message." In an exhibit accompanying their motion to dismiss, respondents provided screenshots of text messages indicating that, on December 9, 2020, Robinson notified Amos that he believed respondents had violated Minnesota law. The messages also illustrated that, on December 9, Robinson and Amos arranged to meet, and then on December 11, Robinson asked what time he could pick up his check and requested "[a] written statement of the truthful reason" for his "termination." Because the text messages indicate that Robinson and Amos met before Robinson's termination to discuss his concerns that respondents were violating the law, we are not persuaded by respondents' argument that "the text messages show no adverse action."

16

At this stage of the proceedings, we must draw all reasonable inferences in favor of Robinson. *Id.* Taking all reasonable inferences in Robinson's favor, we conclude that the complaint alleges that Robinson reported a suspected violation of state law to Amos and then was terminated. Thus, the district court erred by dismissing Robinson's whistleblower claim.

## V. Robinson's complaint fails to allege facts sufficient to state a claim for defamation.

Robinson argues that the complaint "clearly pleads" defamation because respondents "made false statements in regards to information reported to the IRS" and in responding to Robinson's question about "why [he] was terminated." Respondents disagree, arguing that Minnesota law "specifically prevents an action for defamation based upon a written response to a request for a reason for termination" and that Robinson did not allege "what was actually stated to the IRS, how the statements tended to put [him] in a negative light, or how [he] was damaged by the statement[s]."

The district court determined that Robinson's complaint did "not identify what statements [respondents] made to the IRS or anyone else, . . . fail[ed] to establish any causal link between the information reported by [respondents] to the IRS and himself," and did "not plead how he has been damaged, as unspecified potential tax liability is not a valid damage."

Robinson's complaint alleges defamation under two statutes, neither of which supports his cause of action. Robinson's complaint cites Minn. Stat. § 181.933 and Minn. Stat. § 609.765. Section 181.933, subdivision 1, provides that, within 15 days of

termination, a terminated employee may request in writing the reason for termination and that the employer must respond within ten working days with "the truthful reason for the termination." Minn. Stat. § 181.933, subd. 1. Section 181.933, subdivision 2, states that "[n]o communication of the statement furnished by the employer to the employee under subdivision 1 may be made the subject of any action for . . . defamation by the employee against the employer." Minn. Stat. § 181.933, subd. 2. Accordingly, section 181.933 does not provide a basis for a defamation claim.

Section 609.765, subdivision 2, provides that "whoever with knowledge of its false and defamatory character . . . communicates any false and defamatory matter to a third person without the consent of the person defamed is guilty of criminal defamation." Minn. Stat. § 609.765, subd. 2. This court has stated that "private plaintiff/private issue defamation actions must be analyzed under state common law principles." *Weissman v. Sri Lanka Curry House, Inc.*, 469 N.W.2d 471, 473 (Minn. App. 1991). Thus, Robinson cannot bring his defamation claim against respondents under section 609.765.

Still, like the district court did, we consider whether Robinson's complaint states a claim for common-law defamation. The elements of a common-law defamation claim are "(a) a false and defamatory statement about the plaintiff; (b) in an unprivileged publication to a third party; (c) that harmed the plaintiff's reputation in the community." *Maethner v. Someplace Safe, Inc.*, 929 N.W.2d 868, 873 (Minn. 2019) (quotation omitted).

Robinson argues that the complaint alleges that respondents made two types of false statements about him: (1) "false statements in regards to information reported to the IRS";

and (2) false statements about "why [Robinson] was terminated." We consider these statements in turn.

First, Robinson's complaint alleges that he "suffered damage to his reputation as a tax payer and worker by [respondents] reporting false information to the IRS." Robinson's complaint, however, does not allege that respondents made false statements about Robinson to the IRS. The complaint alleges only that respondents provided "false information" to the IRS. This allegation is insufficient to state a claim for defamation because it does not allege that the information was about Robinson. *See id.* (stating that, in a claim for defamation, the false and defamatory statements must be "about the plaintiff" (quotation omitted)); *Brill v. Minn. Mines, Inc.*, 274 N.W. 631, 633 ("Defamatory words, to be actionable, must refer to some ascertained or ascertainable person and that person must be the plaintiff[]."). The complaint therefore fails to allege facts sufficient to support a defamation claim based on "false information" that respondents provided to the IRS.

Second, Robinson's complaint alleges that he "requested the truthful reason for his termination in accordance with Minn. Stat. § 181.933" and that respondents stated that Robinson was "his own business and left" for "lack of work." But Robinson's complaint does not allege that respondents made these statements to a third party or that the statements harmed Robinson's reputation in the community. Thus, the complaint fails to allege facts sufficient to state a claim for defamation. *See Maethner*, 929 N.W.2d at 873. In addition and as noted above, under Minnesota law, if an employee "request[s] in writing that the employer inform the employee of the reason for the termination," the employee cannot bring an action for defamation based on the "statement furnished by the employer" in

19

response. Minn. Stat. § 181.933. Because the complaint alleges that Robinson asked respondents for the reason he was terminated "in accordance with Minn. Stat. § 181.933," he cannot bring an action for defamation based on respondents' answer.

We conclude that the complaint fails to allege facts sufficient to state a claim for common-law defamation.

## VI. Robinson's complaint fails to allege facts sufficient to state a claim for intentional infliction of emotional distress.

Robinson argues that the complaint "clearly makes a claim for emotional distress" because it alleges that respondents "misreported income and other information to the IRS, and [Robinson] has incurred time and stress in clearing his reputation." Respondents argue that the district court properly dismissed Robinson's IIED claim because the complaint fails to allege extreme and outrageous conduct by respondents. The district court determined that Robinson's allegation that he suffered "mental anguish, embarrassment, stress, frustration, usery [sic], helplessness" was "facially insufficient to successfully plead a count of intentional infliction of emotional distress" and dismissed his IIED claim.

The elements of an IIED claim are as follows: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Langeslag v. KYMN Inc.*, 664 N.W.2d 860, 864 (Minn. 2003) (quotation omitted). The supreme court has stated that "[c]onduct is extreme and outrageous when it is so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* at 865 (quotations omitted).

20

Robinson's complaint alleges that he is entitled to compensation for "emotional distress (mental anguish, embarrassment, stress, frustration, usery [sic], helplessness)." But the complaint fails to allege any conduct by respondents that was extreme and outrageous such that it would be "utterly intolerable to the civilized community." *Id.* (quotations omitted). The complaint therefore fails to allege facts sufficient to state a claim for IIED.

In sum, Robinson's complaint alleges facts sufficient to state claims for misrepresentation of employment relationship, fraudulent misrepresentation, and whistleblower retaliation, but fails to allege facts sufficient to state claims for defamation and IIED. In reaching this conclusion, we address only the sufficiency of the complaint under rule 12.02(e) and offer no opinion on the merits of Robinson's claims.

**Affirmed in part, reversed in part, and remanded.**