Jerry GALLE, et al., Appellants,

v.

EXCALIBUR INSURANCE
CO., Respondent.

Robert STANDFIELD, Respondent,

v.

EXCALIBUR INSURANCE
CO., Appellant.

Nos. 81–264, 81–343.

Supreme Court of Minnesota.

May 26, 1982.

Lommen, Nelson, Sullivan & Cole and Mark N. Stageberg, Minneapolis, for Excalibur Ins. Co.

Peterson Bell & Converse, Willard L. Converse and David S. Anderson, St. Paul,

for appellants in 81–264 and respondent in 81–243.

OTIS, Justice.

These appeals involve claims under Minn. Stat. § 65B.44 (1980) of the Minnesota No-Fault Insurance Act for injuries sustained while unloading vehicles. Plaintiffs in case # 81–264, Jerry Galle and Frank Schroedl, brought suit individually against their employer's no-fault insurer, Excalibur Insurance Co. The cases were consolidated for hearing before the district court, which granted defendant Excalibur's motion for summary judgment. Plaintiffs Galle and Schroedl appeal from that order. Robert Standfield, plaintiff in case # 81–343, sued to recover no-fault benefits. Summary judgment was granted in his favor, from which order defendant Excalibur appeals. We affirm in both cases.

Galle and Schroedl were employed as truck drivers, picking up and delivering freight on assigned city routes. Schroedl injured his back on February 27, 1976, when he attempted to lift a heavy wooden crate from the floor of his truck. He was standing inside the vehicle, which was parked at the loading dock. Galle was injured on November 29, 1978, when he attempted to lift a heavy box. He too was standing inside a stationary trailer, unloading cargo onto the loading dock. Robert Standfield was employed by Advance United to drive a delivery truck, loading and unloading freight at Twin City area locations. On May 5, 1976, he had finished his route and parked his truck at the loading dock. He went to the rear of the trailer intending to open the door and retrieve his two wheel dolly from inside. As the door opened a cable broke, jamming the door and causing Standfield to fall forward and injure himself. All three men have received workers' compensation benefits for lost income due to disabilities sustained and now seek additional no-fault compensation.

1. The trailer of a truck is statutorily defined as a vehicle under Minn.Stat. § 65B.43, subd. 2(c)

Minn.Stat. § 65B.44, subd. 1 (1980), states that "basic economic loss benefits shall provide reimbursement for all losses suffered through injury arising out of maintenance or use of a motor vehicle * * *." The material facts regarding the three accidents are not in dispute. Galle and Schroedl were both engaged in loading and unloading heavy boxes inside of stationary vehicles.[1] Standfield was injured when he opened the rear door of his truck to unload his dolly at the end of his delivery route. The only issue on appeal is whether plaintiffs' injuries arose out of the "maintenance or use of a motor vehicle," the definition of which is set forth in Minn.Stat. § 65B.43, subd. 3 (1980):

> "Maintenance or use of a motor vehicle" means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it. *Maintenance or use of a motor vehicle does not include * * * (2) conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying, entering into or alighting from it.*

(emphasis added).

Recently we considered the loading and unloading clause when a plaintiff was struck by a dumpster which fell from the rear of a garbage truck. *Krupenny v. West Bend Mutual Ins. Co.,* 310 N.W.2d 133 (Minn.1981). Although the mechanical unloading of the dumpster made Minn.Stat. § 65B.43, subd. 3 applicable, recovery under the Act was denied because the plaintiff was not occupying, entering into or alighting from the garbage truck when the dumpster fell. In the present case, all three plaintiffs were engaged in loading or unloading activities and were occupying or entering their vehicles at the time they suffered their injuries. Thus both requirements of § 65B.43, subd. 3(2) (1980) have been met.

(1980).

We do not believe, however, that all loading and unloading injuries incurred while occupying, entering into or alighting from a vehicle are necessarily compensable under the No-Fault Act. The injury must also arise out of the "maintenance or use of a motor vehicle as a vehicle." Minn.Stat. § 65B.43, subd. 3 (1980). To hold otherwise would lead to extreme and absurd coverage results which we are certain the Legislature never intended. Would no-fault coverage exist in a situation where a Brinks security guard standing in the rear of his truck unloading money is shot by a robber? Would coverage be extended to an instance where the freight being unloaded were fireworks and the injury resulted from an accidental explosion? We do not believe these are injuries for which the Act is intended to provide compensation, for there is no causal relationship between the injury and the use of the vehicle for transportation purposes. *Haagenson v. Nat'l Farmers Union Property & Casualty Co.*, 277 N.W.2d 648, 652 (Minn.1979).

The Commissioners' Comments to Section 1(a)(6) of the 1972 Uniform Motor Vehicle Accident Reparations Act, in discussing the definition of "maintenance or use of a motor vehicle" state:

> While "use" has a broader meaning than operating or driving a vehicle, the requirement that use of the motor vehicle be "as a motor vehicle" qualifies the term so that both the tort exemption and the availability of basic reparation benefits are more nearly limited to activities whose costs should be allocated to motoring as part of an automobile insurance package.

14 Uniform Laws Annotated 55–56 (1980).

The maintenance or use issue has been discussed in several cases, but "each case presenting such a question must to a great degree, turn on the particular facts presented." *Associated Independent Dealers, Inc. v. Mutual Service Ins. Cos.*, 304 Minn. 179, 182, 229 N.W.2d 516, 518 (1975) (footnote omitted). A person injured when he is entering a car intending to become a passenger would be allowed recovery. *See Haag-enson v. Nat'l Farmers Union Property & Casualty Co.*, 277 N.W.2d 648, 652 (Minn. 1979). In contrast, an intoxicated, unconscious person who dies due to exposure when left sitting in a car overnight has not suffered an injury arising from the use of the automobile as a vehicle. *See Engeldinger v. State Auto & Casualty Underwriters*, 306 Minn. 202, 236 N.W.2d 596 (1975). Where it is established that the injury or loss "was a natural and reasonable incident or consequence of the use of the [insured] vehicle," *Associated Independent Dealers, Inc. v. Mutual Service Ins. Cos.*, 304 Minn. 179, 182, 229 N.W.2d 516 (1975) (footnote omitted), a sufficient relationship between the injury and the use of the vehicle for transportation purposes exists to allow recovery.

We have no hesitation in finding Standfield's injury encompassed within the Act. He was injured by a part of the vehicle itself which malfunctioned when he was attempting to unload a piece of equipment from the rear of the truck. However, we do not believe that the activities in which Galle and Schroedl were engaged arose from the "maintenance or use of a motor vehicle" within the meaning of the No-Fault Act. While it is true that lifting injuries are not unlikely when the vehicle in question is a delivery truck, it is apparent that the injuries occur not because of the use of the vehicle but because of the nature of plaintiffs' employment. This is not one of those activities "whose costs should be allocated to motoring as part of an automobile insurance package." Commissioner's Comments *supra*.

The injuries sustained by Galle and Schroedl when lifting cargo were work-related rather than the result of an accident involving the use of a vehicle for transportation purposes. Denying no-fault benefits and allowing workers' compensation benefits is consistent with the purpose of the workers' compensation statute—to provide compensation for injuries arising out of and in the course of employment. *See, e.g., Lewis v. Connolly Contracting Co.*, 196 Minn. 108, 264 N.W. 581 (1936). Further-

more, such a result is consistent with the general purposes of the No-Fault Act, stated in Minn.Stat. § 65B.42 (1980):

> The detrimental impact of automobile accidents on *uncompensated* injured persons, * * * requires that sections 65B.41 to 65B.71 be adopted to effect the following purposes:
>
> > (1) To relieve the severe economic distress of *uncompensated victims of automobile accidents* * * *;
> >
> > (3) To encourage appropriate medical and rehabilitation treatment of the *automobile accident* victim * * *;
> >
> > (5) To correct imbalances and abuses in the operation of the automobile accident tort liability system * * *;

(emphasis added).

Affirmed.

KELLEY, J., took no part in the consideration or decision of this matter.

WAHL, Justice (dissenting in part).

I agree with the majority opinion that Standfield's injury is encompassed within the No-Fault Act but must respectfully dissent from the holding that the injuries of Galle and Schroedl are not so encompassed.

Minn.Stat. § 65B.43, subd. 3 (1980), clearly sets out that "[m]aintenance or use of a motor vehicle does not include * * * conduct in the course of loading and unloading the vehicle *unless the conduct occurs while occupying, entering into or alighting from it.*" (Emphasis added.) Recovery was denied in *Krupenny* because the plaintiff was not occupying, alighting from or entering the garbage truck when the dumpster fell. *Krupenny v. West Bend Mutual Insurance Co.*, 310 N.W.2d 133 (Minn.1981). Here, Galle and Schroedl were both "occupying" their trucks when their injuries occurred. To hold that those injuries did not arise out of the use of the plaintiffs' trailers as vehicles would ignore the clear language of the statute. When construing statutes, "[t]he general rule is that where language is unambiguous, the clearly expressed intent must be given effect and there is no room for construction. * * * * In interpreting a statute, a court must construe the language so as to effectuate the legislative intent." *Mankato Citizens Telephone Co. v. Commissioner of Taxation*, 275 Minn. 107, 112, 145 N.W.2d 313, 317 (1966) (citations omitted).

The legislature clearly intended some loading and unloading injuries to be compensable under the Act. In limiting the injuries by specifying that only those occurring while a person is occupying, entering into or alighting from a motor vehicle arise out of the "maintenance and use of a motor vehicle," the legislature has eliminated many injuries covered by workers' compensation benefits or other reparation schemes.

While the injuries of Galle and Schroedl were not the standard automobile accident injury, neither were they irrational, bizarre happenings in view of the use of the truck. As a matter of law these injuries arose out of the use of a motor vehicle and are compensable under the Minnesota No-Fault Act.

TODD, Justice (dissenting in part).

I join in the dissent of Justice Wahl.

SCOTT, Justice (dissenting in part).

I join in the dissent of Justice Wahl.