STATE FARM FIRE & CASUALTY CO., Respondent,

v.

David STROPE, et al., Respondents.

WESTERN NATIONAL MUTUAL INSURANCE CO., Appellant,

v.

David STROPE, Respondent.

David STROPE, Defendant and Third–Party Plaintiff, Respondent,

v.

STATE FARM FIRE AND CASUALTY CO., Third–Party Defendant, Respondent.

No. CX–91–1488.

Court of Appeals of Minnesota.

March 3, 1992.

Review Denied May 15, 1992.

James Cope, Virginia, for State Farm Fire & Cas. Co.

Mark Weir, Virginia, for David Strope, et al.

Theodore J. Smetak, Gregory J. Johnson, Arthur, Chapman, McDonough, Kettering & Smetak, P.A., Minneapolis, for Western Nat. Mut. Ins. Co.

Considered and decided by AMUNDSON, P.J., and FORSBERG and KALITOWSKI, JJ.

## OPINION

KALITOWSKI, Judge.

This matter involves consolidated declaratory judgment actions with cross motions for summary judgment. Western National Mutual Insurance Co. (Western National) challenges the trial court's determination that Western National has a duty to provide no-fault coverage and indemnification to David Strope for damages claimed by Doris Strope, and to provide basic economic loss benefits to Doris Strope. Judgment was entered pursuant to Minn.R.Civ.P. 54.-02.

## FACTS

The following is a summary of the facts stipulated to by the parties for purposes of the declaratory judgment action.

On November 7, 1987, at approximately 6 a.m., David and Doris Strope were traveling in a pick-up truck to participate in the opening day of hunting season. David Strope was driving, Doris Strope occupied the passenger seat, and the Stropes' Labrador Retriever was sitting on the front seat between them.

David Strope had placed two Winchester automatic rifles, one of which was loaded, on the floor in front of the seat occupied by the Stropes. The guns were enclosed in gun casings.

The accident occurred when the dog moved onto the floor and its feet became tangled in one of the gun casings. Doris Strope first reached down and attempted to free the dog. She then asked David Strope to help. The loaded rifle accidentally discharged when David Strope placed his hand on the handle of the gun casing. Doris Strope was struck by a bullet in the left calf.

At the time of the accident, the truck was insured under an automobile insurance policy issued by Western National to "David Strope, individually and/or East Range Builders Supply, Incorporated." The policy provided $20,000 in basic economic loss coverage, and liability limits of $100,000 per person or $300,000 per accident. The policy contained a standard

clause restricting its coverage to accidents resulting in bodily injuries arising out of the "ownership, maintenance or use, including loading and unloading, of any automobile."

## ISSUE

Did the trial court err in determining the accident arose out of the use of a motor vehicle?

## ANALYSIS

■ While the trial court in this case made a number of other determinations, the only one at issue here is whether this accident arose out of the use of a motor vehicle. Contrary to the Stropes' assertion that the clearly erroneous standard of review applies, this issue is a legal one. *See Continental W. Ins. Co. v. Klug,* 415 N.W.2d 876, 877 (Minn.1987). As such, we need not defer to the trial court's determination. *See Gullickson v. Lutsen Resort, Inc.,* 474 N.W.2d 216, 218 (Minn.App.1991), *pet. for rev. denied* (Minn. Oct. 23, 1991).

■ In determining whether injuries arise out of the use or maintenance of a motor vehicle, three factors are considered:

> The first consideration is the extent of causation between the automobile and the injury. * * * [T]he vehicle must be an *"active accessory"* in causing the injury. * * *
>
> If a court finds the requisite degree of causation, it should next determine whether an *act of independent significance* occurred, breaking the causal link between "use" of the vehicle and the injuries inflicted. * * *
>
> If a court finds the requisite degree of causation and no intervening independent act, it must consider one final inquiry. Though there may be a causal link between use of the car and the injury, the court must determine what type of "use" of the automobile was involved. * * * [C]overage should exist only for injuries resulting from use of an automobile for transportation purposes.

*Klug,* 415 N.W.2d at 878 (emphasis added). The dispute here involves whether the

truck was an "active accessory" in causing the injury.

■ Minnesota cases addressing the issue of whether accidents involving gunshot injuries are covered under insurance policies governed by the no-fault act have been limited to situations involving parked vehicles. *See, e.g., National Family Ins. Co. v. Boyer,* 269 N.W.2d 10 (Minn.1978); *Hanson v. Grinnell Mut. Reinsurance Co.,* 422 N.W.2d 288 (Minn.App.1988), *pet. for rev. denied* (Minn. June 29, 1988); *Farmers Ins. Group v. Chapman,* 416 N.W.2d 857 (Minn.App.1987); *Fire & Cas. Ins. Co. v. Illinois Farmers Ins. Co.,* 352 N.W.2d 798 (Minn.App.1984). In each case, the court concluded the injuries were not causally related to the use of the vehicle either because the vehicle was not an "active accessory" but the "mere situs" of the accident (the first *Klug* factor), or because the vehicle was not being used for transportation at the time of the accident (the third *Klug* factor). *See, e.g., Boyer,* 269 N.W.2d at 15; *Hanson,* 422 N.W.2d at 290–91; *Chapman,* 416 N.W.2d at 859; *Illinois Farmers,* 352 N.W.2d at 800.

■ To establish a vehicle is an active accessory, the causal connection between the vehicle and any resulting injury must be "reasonably apparent" and cannot be supplied by speculation, surmise or conjecture. *See Boyer,* 269 N.W.2d at 15 (quoting *Associated Indep. Dealers, Inc. v. Mutual Serv. Ins. Cos.,* 304 Minn. 179, 181, 229 N.W.2d 516, 518 (1975)). Western National argues the stipulated facts in this case fail to show the truck was "actively" involved or played a necessary role in causing the rifle to discharge. We agree.

In support of its determination that the use of the truck actively contributed to the accident, the trial court stated: "David Strope's *distracted efforts* to keep the truck on the road were coupled with his *distracted efforts* to disentangle the dog." (Emphasis added.) The trial court's assumption is not supported by the stipulated facts which state:

> That at the time of the accident, Defendant David Strope was driving down the road and reached down with his right

hand in an attempt to assist Defendant Doris Strope in extricating the dog's legs from the gun casing and while placing his hand on the handle of the gun casing, the firearm contained therein accidentally discharged and its bullet struck Defendant Doris Strope in the calf of her left leg.

The facts fail to demonstrate that David Strope's continued operation of the vehicle contributed in any way to the discharge of the gun.

Courts generally require proof of the active involvement of the vehicle and not mere speculation. *See, e.g., Boyer,* 269 N.W.2d at 15 (supreme court rejected as "pure speculation" insured's assertion that he "may have" caught the hammer of the gun on the inside of the car roof); *see also Hanson,* 422 N.W.2d at 291 (insured could not point to anything about truck itself that would have caused the rifle to discharge or anything on the seat that could have bumped the gun and caused it to discharge); *Cameron Mut. Ins. Co. v. Ward,* 599 S.W.2d 13, 18 (Mo.Ct.App.1980) (court rejected as speculative insured's theory that motion of car may have caused rifle to discharge).

Where coverage is found, the active involvement of the vehicle is apparent. *See, e.g., Waseca Mut. Ins. Co. v. Noska,* 331 N.W.2d 917, 919 (Minn.1983) (actual movement of vehicle fanned ashes into flames which left vehicle and started grass fires); *State Farm Mut. Auto. Ins. Co. v. Partridge,* 10 Cal.3d 94, 109 Cal.Rptr. 811, 815–16, 514 P.2d 123, 127–28 (1973) (pistol discharged and struck passenger when insured drove off paved area onto rough terrain).

In this case, the facts fail to establish that either the movement of the truck or David Strope's continued operation of the vehicle caused or actively contributed to the discharge of the rifle. Without this necessary connection, we must conclude the trial court erred in determining the accident arose out of the use of a motor vehicle.

Finally, our holding is an appropriate allocation of risk under the no-fault automobile insurance act. The risks associated with this accident are not related to motoring, and should not be allocated to motoring as part of an automobile insurance package. *See Classified Ins. Corp. v. Vodinelich,* 368 N.W.2d 921, 923 (Minn.1985); *Galle v. Excalibur Ins. Co.,* 317 N.W.2d 368, 370 (Minn.1982).

## DECISION

The trial court erred in determining the injury from this accident arose out of the use of a motor vehicle.

Reversed.