ALLIED MUTUAL INSURANCE COMPANY, Respondent,

v.

WESTERN NATIONAL MUTUAL INSURANCE COMPANY, Petitioner, Appellant.

No. C2-95-490.

Supreme Court of Minnesota.

Aug. 29, 1996.

---

Gislason, Martin & Varpness, P.A., Dan T. Ryerson, Edina, MN, for appellant.

Ramler Law Office, P.A., George C. Ramler, Minnetonka, MN, for respondent.

## OPINION

COYNE, Justice.

After Marla Decker was run over and injured by an uninsured motorist, her automobile insurer, Allied Mutual Insurance Company, paid her $10,000 pursuant to an arbitration award of benefits with respect to her uninsured motorist coverage. Allied Mutual initiated this action for indemnity, however, on the ground that its policy afforded only excess coverage with respect to Ms. Decker's claim and that pursuant to Minn.Stat. § 65B.49, subd. 3a(5) (Supp. 1989), Western National Mutual Insurance Company was the primary insurer. Based on stipulated facts the two insurers brought cross-motions for summary judgment. The district court granted Allied Mutual's motion and judgment was entered accordingly. The court of appeals affirmed. *Allied Mut.*

*Ins. Co. v. Western Nat'l Mut. Ins. Co.,* 536 N.W.2d 906 (Minn.App.1995). We reverse.

On May 27, 1989 Malcolm McMillan escorted Marla Decker and Collette Adelman to O'Hara Brothers' Bar in St. Cloud. Four hours later, when the trio returned to McMillan's car, which had been parked in the lot adjacent to the bar, they discovered they were locked out of the car. Earlier that day McMillan had broken the key in the lock. While McMillan attempted to unlock the car door, the two women watched from a nearby vantage point.

While McMillan was trying to unlock the door of his car, an uninsured vehicle, driven at an unsafe speed by Brock Larson, struck Decker, McMillan, and McMillan's car.

Minnesota Statutes § 65B.49, subd. 3a (Supp.1989) requires the inclusion of uninsured and underinsured motorist coverages in every policy of automobile liability insurance issued in Minnesota with respect to any vehicle registered or principally garaged here. The statute also instructs regarding the order of priority among insurers which might afford coverage with respect to an accident:

(5) If at the time of the accident the injured person is occupying a motor vehicle, the limit of liability for uninsured and underinsured motorist coverages available to the injured person is the limit specified for that motor vehicle. However, if the injured person is occupying a motor vehicle of which the injured person is not an insured, the injured person may be entitled to excess insurance protection afforded by a policy in which the injured party is otherwise insured. The excess insurance protection is limited to the extent of covered damages sustained, and further is available only to the extent by which the limit of liability for like coverage applicable to any one motor vehicle listed on the automobile insurance policy of which the injured person is an insured exceeds the limit of liability of the coverage available to the injured person from the occupied motor vehicle.

If at the time of the accident the injured person is not occupying a motor vehicle,

the injured person is entitled to select any one limit of liability for any one vehicle afforded by a policy under which the injured person is insured.

Minn.Stat. § 65B.49, subd. 3a(5) (Supp.1989).

█ The parties and the district court agreed that if Ms. Decker was "occupying" McMillan's automobile when she was struck by the Larson vehicle, the uninsured motorist coverage of the Western National policy was primary. But if Ms. Decker was not "occupying" the McMillan car, the uninsured motorist coverage afforded by her Allied Mutual policy was primary. In deciding that Ms. Decker was "occupying" McMillan's car when the Larson vehicle struck her and that Western National was the primary insurer and must indemnify Allied Mutual, the district court looked neither to the commonly accepted meaning of "occupy" nor the Western National policy definition of "occupying," but relied solely on a series of opinions of the court of appeals· defining "occupying" in the terms of a "reasonable geographic perimeter around a vehicle or a continuing relationship between a vehicle and the claimant." *E.g.,* *Horace Mann Ins. Co. v. Neuville,* 465 N.W.2d 432, 433 (Minn.App.1991); *Klein v. United States Fidelity & Guaranty Co.,* 451 N.W.2d 901, 903–04 (Minn.App.1990), *pet. for rev. denied* (Minn., Mar. 27, 1990). *But see Dohman v. Housely,* 478 N.W.2d 221 (Minn. App.1991), *pet. for rev. denied* (Minn., Feb. 11, 1992). Similarly, after noting that the No–Fault Act does not define "occupying," the court of appeals relied exclusively on its prior cases. *Allied Mut. Ins. Co. v. Western Nat'l Mut. Ins. Co.,* 536 N.W.2d 906 (Minn. App.1995).

That the No–Fault Act does not define "occupy" or "occupying" does not suggest to us. the necessity to attribute to the term a definition far removed from common usage. If an adult can be said to have a "relationship" with an inanimate object like an automobile, it seems reasonable to expect any such "relationship" to be limited to one's own vehicle. As for a "reasonable geographic perimeter" around an automobile, the application of such a measure to determine occupancy calls to mind the equity that depended on the length of the chancellor's foot. Rather than treating the term "occupy" or "occupying" as an ambiguity inviting creative definition, we are of the opinion that we must look first to the ordinary and commonly accepted meaning of "occupy"—to take possession of a place or to be resident or established in a place. The definition which appears in the policies issued by both parties to this action is, however, somewhat broader than the commonly accepted meaning: " 'Occupying' means in, upon, getting in, on, out or off." The policy definition is plain and straightforward and affords no excuse for creating some recondite definition which can be molded to fit whatever conclusion is convenient. Consequently, we are constrained to adhere to the policy definition.

█ Although neither this definition nor any other will forestall all future lawsuits regarding a claim based on "occupancy," this court has long required some causal connection between the occupancy of the vehicle and the injury. For example, in *Tlougan v. Auto–Owners Ins. Co.,* 310 N.W.2d 116 (Minn.1981), we held that even though the claimant was indisputably occupying a seat in the insured pickup truck, there was insufficient causal connection between the truck and the burns the child suffered when she set her dress on fire while playing with matches. The connection need not be proximate cause in the tort sense, but it must be "something more than the vehicle being the mere situs of the injury." *Id.* at 117. The rationale for the decision in *Tlougan* has its source in such cases as *Associated Indep. Dealers, Inc. v. Mutual Serv. Ins. Cos.,* 304 Minn. 179, 229 N.W.2d 516, 518 (1975); *Holm v. Mutual Serv. Cas. Ins. Co.,* 261 N.W.2d 598, 602–03 (Minn.1977); and *National Family Ins. Co. v. Boyer,* 269 N.W.2d 10, 15 (Minn.1978).

When Ms. Decker was struck by the Larson vehicle she was a pedestrian. That she was standing in the vicinity of the McMillan automobile was mere happenstance. Decker was not occupying—*i.e.,* in or getting in— McMillan's automobile; and, in fact, she had no immediate expectation of occupying the car, which McMillan could not unlock.

Moreover, the McMillan automobile was no more "involved" in the accident than was Decker. Like Decker the McMillan automobile was simply present: it was parked, unoccupied and unmoving, and was a victim (if the term "victim" can be applied to an inanimate object) of Larson's carelessness just as were Decker and McMillan.

In short, under the policy definition of "occupying," which is more generous to the insured than the ordinarily accepted meaning of the term, Ms. Decker was not occupying the McMillan vehicle when she was injured by Larson's uninsured vehicle. Therefore, Allied Mutual's policy, in which Decker is a named insured, provides the primary uninsured motorist coverage with respect to the parking lot accident of May 27, 1989, and Allied Mutual was obligated to pay the sum awarded to Decker. Furthermore, there was no conceivable causal connection between the McMillan automobile and Decker's injuries.

Accordingly, we reverse the judgment in favor of Allied Mutual and direct the entry of judgment in favor of Western National Mutual Insurance Company.

Reversed.