AUTO–OWNERS INSURANCE
COMPANY, Respondent,

v.

**GREAT WEST CASUALTY, Appellant.**

No. A04–1591.

Court of Appeals of Minnesota.

May 10, 2005.

Thomas E. Emmer, Teresa A. Anderson, Emmer & Associates, P.A., Maple Plain, MN, for respondent.

Michael W. McNee, Tamara L. Novotny, Cousineau, McGuire & Anderson, Minneapolis, MN, for appellant.

Considered and decided by GORDON SHUMAKER, Presiding Judge; TOUSSAINT, Chief Judge; and DIETZEN, Judge.

## O P I N I O N

DIETZEN, Judge.

In this no-fault insurance benefits proceeding, appellant challenges the district court's decision awarding summary judgment to respondent. The district court concluded that the insured's injury arose out of the "maintenance or use" of an automobile-transport trailer insured by appellant, and not out of the "maintenance or use" of a stalled vehicle insured by respondent, which was loaded on top of the trailer. Because we conclude that the injury arose out of the "maintenance or use" of the stalled vehicle, and not the trailer, we reverse and remand.

## FACTS

On February 9, 2001, David Martin, a driver for Crossman Auto Transport, Inc., drove an automobile-transport trailer loaded with used vehicles to Gessell Auto Sales, owned by Jerome Gessell. After parking the trailer on an adjacent street, Martin informed Gessell that one of the vehicles was stalled on the top deck of the trailer near the front of the cab. Martin asked Gessell for assistance in manually unloading the stalled vehicle from the trailer so it could be jump-started on the street. Gessell and a friend climbed up the trailer's ladder to the stalled vehicle while Martin sat inside the stalled vehicle to release the brake. Gessell and the friend decided to pull back on the stalled vehicle's fender because there was no room on the trailer to push the stalled vehicle from the front. Gessell placed one foot on the trailer's wheel-track and one foot on a beam. When Gessell and the friend pulled on the stalled vehicle's fender, it rolled back quickly and Gessell jumped out of the way to avoid a collision. As Gessell moved out of the stalled vehicle's path, his left foot slipped between two beams on the trailer, causing him to become wedged in between the beams, which seriously injured his left leg.

The accident was reported to appellant Great West Casualty Company, the insurer of the automobile-transport trailer, and

respondent Auto Owners Insurance Company, the insurer of Gessell and his business vehicles, including the stalled vehicle. In November 2002, respondent brought a complaint for declaratory judgment, alleging that it was not responsible for the payment of no-fault benefits. On cross-motions for summary judgment, the district court granted respondent's motion, finding that Gessell's injuries "arose out of the maintenance and use" of the automobile-transport trailer insured by appellant. Specifically, the district court held that (1) the trailer was an "active accessory" in causing Gessell's injury; (2) the injury "occurred as a reasonable consequence" of the use of the trailer; and (3) the accident resulted from the use of the trailer for transportation purposes. This appeal follows.

### ISSUE

Did the district court err in granting summary judgment for respondent by concluding that the injury resulted from the "maintenance or use" of the trailer?

### ANALYSIS

■ "On an appeal from summary judgment, we ask two questions: (1) whether there are any genuine issues of material fact and (2) whether the lower court[ ] erred in [its] application of the law." *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). We "must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). On appeal from a declaratory judgment, we review the district court's factual findings for clear error

but review de novo its determinations of questions of law. *Rice Lake Contracting Corp. v. Rust Env't & Infrastructure, Inc.*, 549 N.W.2d 96, 98–99 (Minn.App.1996), *review denied* (Minn. Aug. 20, 1996).

■ The parties acknowledge that there are no genuine issues of material fact in dispute, and that the only issue is how Minnesota's no-fault insurance benefits statute applies to apportion responsibility for Gessell's benefits. We do not defer to the district court's application of the law when the material facts are not in dispute. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). It is undisputed that Gessell was not a driver or occupant of the automobile-transport trailer or the stalled vehicle at the time of the accident. Therefore, the issue is whether Gessell's injury arose "from the maintenance or use of a motor vehicle." Minn.Stat. § 65B.47, subd. 3 (2000).[1] If the injury occurred from the "maintenance or use" of a vehicle, and the injured person "is not a driver or occupant of another involved motor vehicle, the security for the payment of basic economic loss benefits is the security covering the vehicle, or if none, the security under which the injured person is an insured." *Id.* We now turn to an analysis of existing precedent to determine whether Gessell's injury arose from the "maintenance or use" of the automobile-transport trailer or the stalled vehicle.

■ Determining whether an injury occurred from the "maintenance or use" of a vehicle depends upon the facts presented. *Galle v. Excalibur Ins. Co.*, 317 N.W.2d 368, 370 (Minn.1982). But "[w]hether an injury arose out of the maintenance or use of a motor vehicle is a question of law."

---

1. State law at the time of the accident provided that all persons injured from the "maintenance or use of a motor vehicle" had a right to economic-loss benefits. Minn.Stat. § 65B.46, subd. 1 (2000). To be eligible for benefits, a motor vehicle must be maintained or used "as a vehicle, including ... occupying, entering into, and alighting from it." Minn.Stat. § 65B.43, subd. 3 (2000).

*Kemmerer v. State Farm Ins. Cos.,* 513 N.W.2d 838, 842 (Minn.App.1994), *review denied* (Minn. June 2, 1994).

The Minnesota Supreme Court has established a three-part test to determine when an injury occurred from the "maintenance or use" of a vehicle. *Cont'l W. Ins. Co. v. Klug,* 415 N.W.2d 876, 877–78 (Minn. 1987). First, the vehicle must be an "active accessory" in the cause of the injury. *Id.* at 878. The "active accessory" causation standard is "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *Id.* (quotation omitted). Second, there cannot be an act of independent significance that breaks the chain of causation between the vehicle and the injury. *Id.* For example, a motorcyclist was ineligible for no-fault benefits when a police officer left his squad car and battered the motorcyclist because the tort broke the causal connection between the "maintenance or use" of the squad car and the motorcyclist's injury. *Id.* (citing *Holm v. Mut. Serv. Cas. Ins. Co.,* 261 N.W.2d 598, 603 (Minn.1977)). Third, assuming a causal link between the "maintenance or use" of the vehicle and the injury, "coverage should exist only for injuries resulting from use of an automobile for transportation purposes." *Id.* (citation omitted). For example, coverage was denied when an insured's children were asphyxiated when their mother used a vehicle to commit suicide in the family's garage. *Id.* (citing *Classified Ins. Corp. v. Vodinelich,* 368 N.W.2d 921, 923 (Minn.1985)).

■ The district court applied the *Klug* test to the facts of this dispute and held that appellant, the insurer of the automobile-transport trailer, was responsible for payment of no-fault benefits because the trailer was an "active accessory" in causing Gessell's injury. In other words, the district court reasoned that at the time of the injury, Gessell was performing a transaction essential to the use of the trailer—unloading a vehicle—so the element of causation was met. *See Kern v. Auto Owners Ins. Co.,* 526 N.W.2d 409, 411 (Minn.App. 1995) (concluding truck was "active accessory" to pedestrian's injury because truck "was designed specifically to accommodate and transport materials such as the building materials involved. Put another way, the accident happened, not in a unique or bizarre way, but in a way utilizing the specific design and usage of a pickup truck.").

We disagree. Under the first prong of the *Klug* test, the automobile-transport trailer was the mere situs for Gessell's injury because the actual cause of his injury arose out of the "maintenance or use" of the stalled vehicle. *See Anderson v. Am. Cas. Co.,* 504 N.W.2d 467, 468 (Minn.1993) (concluding trailer was mere situs of insured's injury when insured lost control of bulldozer loaded on trailer). Gessell's undisputed testimony is that there was nothing about the trailer that caused him to fall and that he simply moved to avoid getting hit by the stalled vehicle. The stalled vehicle was not the mere situs of the injury, but it was the movement of the stalled vehicle itself that caused Gessell to jump out of the way and fall between the trailer's beams. Accordingly, we conclude that there is an element of causation between the stalled vehicle and Gessell's injury.

Caselaw construing the first prong supports our determination. In *Anderson,* an insured was injured when a bulldozer he was attempting to drive off a trailer fell over the trailer's guardrail. *Id.* at 467. The insured testified that he could not control the bulldozer because dew had accumulated on its treads, and he noted that neither the trailer nor the bulldozer were in a defective condition. *Id.* In that case, the supreme court denied no-fault benefits

because the trailer was not an "active accessory" in the cause of the accident. *Id.* at 468. The *Anderson* Court reasoned that there was no causal connection between the "maintenance or use" of the trailer and the injury; the trailer was the mere situs of the injury, which was actually caused by the presence of dew on the bulldozer's treads. *Id.*

Like *Anderson,* our case involves a vehicle (stalled vehicle) located within a vehicle (automobile-transport trailer). In other words, the stalled vehicle is equivalent to the bulldozer with dew on its treads that was the actual cause of the injury. Here, it was the sudden movement of the stalled vehicle that caused Gessell to jump to avoid a collision for which he sustained injuries. The automobile-transport trailer is equivalent to the trailer carrying the bulldozer in *Anderson* that was simply the situs of the injury. Nothing in the "maintenance or use" of the automobile-transport trailer caused Gessell's injuries.

In another case, the supreme court denied no-fault benefits to an insured who was injured while operating a backhoe that was mounted on the back of a truck. *Waldbillig v. State Farm Mut. Auto. Ins. Co.,* 321 N.W.2d 49, 53 (Minn.1982). The court held that the operation of the backhoe did not relate to the "maintenance or use" of the truck, because the backhoe was completely separated from the truck at the time of the injury. *Id.* at 50–51 ("The mere fact that an accident occurred while the injured party was on, in or near a statutorily defined motor vehicle, of itself is not dispositive."). Here, as in *Waldbillig,* the relevance of the automobile-transport trailer is merely its fortuitous proximity to the stalled vehicle, which was the actual cause of Gessell's injuries.

Respondent counters that this situation is more like a case where an insured pedestrian sought no-fault benefits when she was struck by siding that blew out of a nearby truck. *See Kern,* 526 N.W.2d at 410–11. In *Kern,* this court determined that the truck was an "active accessory" to the injury because the injury occurred in a method that utilized "the specific design and usage" of the truck. *Id.* at 411. But *Kern* is inapplicable here because there is no indication that Gessell's injury occurred through "the specific design and usage" of the automobile-transport trailer. No defect in "the specific design or usage" of the automobile-transport trailer is alleged to have caused Gessell to jump to avoid a collision with the stalled vehicle. Instead, Gessell simply jumped to avoid the stalled vehicle.

In a consolidated case decided before *Klug,* the supreme court allowed no-fault benefits to an insured who was injured when a trailer's door cable snapped. *Galle,* 317 N.W.2d at 369–71. The court allowed no-fault benefits for the trailer-cable injury because the injury was caused "by a part of the vehicle itself." *Id.* at 370; *see also N. River Ins. Co. v. Dairyland Ins. Co.,* 346 N.W.2d 109, 114 (Minn.1984) (concluding that no-fault benefits applied when farmer was injured while removing tarpaulin from trailer because farmer "was injured by a part of the vehicle itself which malfunctioned ... when he alighted from the vehicle"). But these cases are distinguishable because the claims resulted from defects in the underlying vehicles. Here, there is no indication that Gessell's injury occurred through a defect in the "specific design and usage" of the automobile-transport trailer. Instead, the stalled vehicle, insured by respondent, was the reason why Gessell climbed on to the trailer in the first place. Under existing caselaw, application of the first factor of the *Klug* test results in a determination that the stalled vehicle, not the automobile-transport trailer, was the "active accessory" to Gessell's

injuries. We now apply the remainder of the *Klug* test to determine responsibility for Gessell's no-fault benefits.

Turning to the second prong of the *Klug* test, there was no act of independent significance that broke the causal chain between the stalled vehicle and Gessell's injury. In other words, the injury "occurred as a reasonable consequence" of the plan to pull the stalled vehicle off the trailer. Under the third prong, the stalled vehicle was being used for transportation purposes at the time of the injury. *See Kemmerer*, 513 N.W.2d at 843 (concluding that no-fault benefits must be paid when truck-topper door injured insured while camping because at time of injury, truck was being used for transportation purposes since it was about to be moved to another campsite). Here, the possibility of the vehicle stalling was clearly a risk associated with motoring. *See id.* (commenting that policy behind awarding no-fault benefits is to restrict "coverage to risks associated with motoring"). Attempting to move the stalled vehicle off the trailer was a risk integral to the nature of the use of the stalled vehicle. Therefore, because the three-part *Klug* test applies to the stalled vehicle, Gessell's injury occurred from the "maintenance or use" of the stalled vehicle, not the automobile-transport trailer, and the district court erred by granting respondent's motion for summary judgment. Accordingly, respondent is responsible for payment of Gessell's no-fault benefits under Minn.Stat. § 65B.47, subd. 3.

## DECISION

Because we conclude that Gessell's injuries arose out of the "maintenance or use" of the stalled vehicle under Minn.Stat. § 65B.47, subd. 3 (2000), the district court's grant of summary judgment in favor of respondent is reversed. We reverse and remand for an order in accord with this opinion.

**Reversed and remanded.**