**ILLINOIS FARMERS INSURANCE COMPANY, Appellant,**

v.

**Mariese MARVIN, et al., Respondents.**

No. A05–874.

Court of Appeals of Minnesota.

Jan. 17, 2006.

Kathleen M. Loucks, Timothy J. Crocker, Gislason & Hunter, LLP, Minnetonka, MN, for appellant.

Daniel T. Cody, Brendan J. Cody, Cody Law Offices, St. Paul, MN, for respondents.

Considered and decided by LANSING, Presiding Judge; HUDSON, Judge; and HUSPENI, Judge.

## OPINION

HUSPENI, Judge.*

On appeal from summary judgment for respondent, appellant argues that the district court erred in finding respondent an occupant of a vehicle insured by appellant for the purposes of underinsured motorist coverage. Appellant further argues that

the district court erred in finding that respondent's injuries arose out of the maintenance and use of the insured vehicle as a vehicle. Because we conclude that the district court did not err in finding that respondent was entitled to recover underinsured motorist benefits, we affirm.

## FACTS

Respondent Mariese Marvin[1] was injured as a result of being pinned between an automobile owned by Tonya Weigel and one owned by Joseph Betz. Weigel is an insured of appellant Illinois Farmers Insurance Company.

On the day of her injury, respondent accompanied Weigel to the house of Weigel's father, Joseph Betz, to pick up some toys. Upon arrival, Weigel drove her Explorer to the back garage and parked. Respondent and Weigel exited the vehicle and began placing large toys in the Explorer's rear cargo area. At one point, respondent leaned into the cargo area of the Explorer and pushed toys back to make room for one more toy. As she slid off of the cargo floor onto the ground, Betz's vehicle backed into the Explorer, crushing respondent's legs between the bumpers of the two automobiles.

Betz and Weigel were the only witnesses at the scene, although neither of them actually saw the impact occur. Weigel testified that the accident happened less than five minutes after she and respondent exited the Explorer, and at the moment of impact, her back was turned to the Explorer. However, when Weigel heard the impact, she turned to see respondent standing upright, crushed between the Betz vehicle and the Explorer. After Betz moved his car forward, Weigel

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. Mariese and husband Jeffrey Marvin are the respondents, but because Mariese is the one injured, for purposes of this appeal she is referred to as respondent.

lowered respondent to the ground. Respondent sustained compound fractures in her right and left knees and right ankle as a result of the accident.

Respondent settled a claim against Betz, exhausting his liability coverage, but the settlement did not fully compensate for her damages. She then submitted the remainder of her claims to appellant, Weigel's insurer, for underinsured coverage, and requested arbitration as required by appellant's policy. In response, appellant instituted a declaratory-judgment action and moved for summary judgment, arguing that respondent was not covered under the policy on the Explorer because she was not an "occupant" of that vehicle at the time she was injured. Respondent also moved for summary judgment and submitted an affidavit in which she stated that she was climbing out of the Explorer's cargo area at the time of impact.

During the motion hearing, appellant argued that the affidavit submitted by respondent with her summary judgment contradicted an earlier affidavit in which she described herself as a pedestrian. Appellant's attorney stated, however, that "even if the Court were to consider her affidavit as true, and even if we would concede for purposes of today's argument only that there is no fact issue, it simply doesn't matter, ... because they cannot prove maintenance of their vehicle as a vehicle." The district court granted respondent's motion for summary judgment and this appeal follows.

## ISSUES

I. Was respondent an "occupant" for purposes of underinsured motorist coverage?

II. Did respondent's injuries arise from the maintenance or use of a motor vehicle?

## ANALYSIS

On appeal from a grant of summary judgment, this court asks two questions: (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990).

The moving party has the burden to prove that there is an absence of any genuine issue of material fact. *Sauter v. Sauter,* 244 Minn. 482, 484, 70 N.W.2d 351, 353 (1955). The evidence must be construed in a light most favorable to the nonmoving party. *Id.* If any doubt exists as to the existence of a genuine issue of material fact, the doubt must be resolved in favor of finding that the fact issue exists. *Poplinski v. Gislason,* 397 N.W.2d 412, 414 (Minn.App.1986), *review denied* (Minn. Feb. 18, 1987). However, when the moving party has met that burden, the opposing party must establish the existence of a genuine issue of material fact. *See Bixler by Bixler v. J.C. Penney Co.,* 376 N.W.2d 209, 215 (Minn.1985).

If summary judgment is supported by affidavits, depositions, etc., the nonmoving party cannot rely on assertions in its pleadings to create a fact issue. *Ahlm v. Rooney,* 274 Minn. 259, 262, 143 N.W.2d 65, 69 (1966). Credibility concerns of a movant's affidavit may lead a court to conclude that a genuine issue of fact exists, but simple assertions that an affiant's statements should be disbelieved is insufficient to defeat a motion for summary judgment. *Bixler,* 376 N.W.2d at 216.

■■■ An insurer's liability is determined by the insurance contract as long as the insurance contract does not omit coverage required by law or violate applicable statutes. *Kelly v. State Farm Mut. Auto. Ins. Co.,* 666 N.W.2d 328, 331 (Minn.2003). Underinsured motorist coverage is intend-

ed "to protect the named insured and other additional insureds from suffering an inadequately compensated injury caused by an accident with an inadequately insured automobile." *Id.* (quotation omitted).

## I.

■ Because Betz's vehicle was inadequately insured to fully compensate respondent, respondent can look to Weigel's policy for coverage if respondent is an "additional insured" as defined by both Minnesota statutes and the insurance policy. Under Minnesota law, an injured person has statutory coverage up to the specified limits of the policy involved "[i]f at the time of the accident the injured person is *occupying* a motor vehicle. . . ." Minn.Stat. § 65B.49, subd. 3a(5) (2004) (emphasis added). Similarly, appellant's policy defines an insured as "[a]ny other person while occupying [the] insured car."

Although Minnesota statutes do not specifically define occupancy, the supreme court has ruled that the definition contained within the policy at issue shall govern, as long as it is not narrower than common usage. *Allied Mut. Ins. Co. v. W. Nat'l Mut. Ins. Co.*, 552 N.W.2d 561, 563–64 (Minn.1996). Appellant's policy defines occupying as being "in, on, [or] getting into or out of" the automobile.

■ Appellant asserts that whether respondent was an occupant raises an issue of material fact because respondent never claimed she was an "occupant" of the Explorer prior to the affidavit submitted with her motion for summary judgment.[2] During the discovery process, respondent described herself as a pedestrian in an answer to an interrogatory, and hospital records describe the accident as one involv-

ing a "pedestrian versus car." In her summary judgment affidavit, however, she states that just before the collision she was leaning forward into the rear of the vehicle and was in the process of sliding off the cargo floor onto the ground. Further, she states that it was her intent to take her seat in the passenger side and leave the area, being transported again by Weigel's Explorer to return home.

We conclude that respondent's description of herself as a pedestrian and the description in the hospital records are not sufficient to raise a question of genuine fact. In response to the interrogatory asking respondent to describe damages sustained to her vehicle, she replied that vehicle damage was inapplicable, as she was a "pedestrian" and the only property damage was to her clothing. Likewise, the hospital records referring to respondent as a "pedestrian" cannot reasonably be construed as legally binding for purposes of insurance coverage. Further, even under the facts most favorable to appellant, respondent was in the process of loading the vehicle, and indisputably the upper half of her body had been in the vehicle mere moments before the accident.

The party opposing the summary judgment cannot rely on general averments in resisting summary judgment. *Ahlm*, 274 Minn. at 262, 143 N.W.2d at 68. Specific facts must be identified which establish the existence of a triable fact. *Id.* Appellant has not identified any facts, other than the fact that respondent had described herself as a pedestrian and that medical reports describe her as a pedestrian. Reviewing the record as a whole, we conclude these references are insufficient to create a material fact issue regarding occupancy. Ac-

---

**2.** This specific argument is only summarily raised in appellant's brief, but it was present-

ed to the district court.

cordingly, respondent was an "occupant" of the Explorer at the time of injury.

## II.

Our determination that respondent was an occupant of the Explorer at the time she was injured does not end our inquiry. Courts have long required some causal connection between the occupancy of the vehicle and the injury sustained. *Allied Mut.*, 552 N.W.2d at 563. We must therefore also determine whether respondent's injury arose out of the maintenance or use of the Explorer as defined by Minnesota statute and caselaw. Minn.Stat. § 65B.43, subd. 3 (2004).

■ "Whether an injury arose out of the maintenance or use of a motor vehicle is a question of law." *Kemmerer v. State Farm Ins. Co.*, 513 N.W.2d 838, 842 (Minn. App.1994), *review denied* (Minn. June 2, 1994); *see also Continental W. Ins. Co. v. Klug*, 415 N.W.2d 876, 877–78 (Minn.1987) (stating that the determination of whether an accident arose out of the maintenance or use of a motor vehicle is a legal issue that turns on the particular facts presented in each case). We review the issue de novo. *Auto-Owners Ins. Co. v. Forstrom*, 684 N.W.2d 494, 497 (Minn.2004). And we note initially that it is an issue that raises difficult and complex questions for a reviewing court. Existing caselaw both informs our analysis and causes us to observe once again how very fact-specific and uniquely fact-determinative is the decision in each case regarding whether coverage will be made available or whether it will be denied.

Under the Minnesota No-Fault Act, "maintenance or use" for purposes of underinsured-motorist (UIM) coverage is defined as "[m]aintenance or use of a motor vehicle as a vehicle." Minn.Stat. § 65B.43, subd. 3 (2004). This definition, however, does not include "conduct in the course of loading and unloading the vehicle *unless the conduct occurs while occupying, entering into or alighting from it.*" *Id.* (emphasis added).

In determining whether respondent's injuries arose from the maintenance or use of the Explorer, we apply the three-part maintenance-and-use analysis set forth in *Klug*, 415 N.W.2d at 878. In that case, the court stated:

> The first consideration is the extent of causation between the automobile and the injury.... [T]he vehicle must be an "active accessory" ... "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." ...
>
> If a court finds the requisite degree of causation, it should next determine whether an act of independent significance occurred, breaking the causal link between "use" of the vehicle and the injuries....
>
> If a court finds the requisite degree of causation and no intervening independent act, it must consider one final inquiry.... [T]he court must determine what type of "use" of the automobile was involved.... [C]overage should exist only for injuries resulting from use of an automobile for transportation purposes.

*Klug*, 415 N.W.2d at 878 (citations omitted). Appellant concedes that the use of the Explorer was for transportation. Thus, the third *Klug* factor is satisfied, and we need only determine whether the Explorer was an active accessory in causing the injury and whether there was an act of independent significance breaking the causal link between the use and the injuries.

### A. Active Accessory

■ For a vehicle to be an active accessory does not require that it actively *cause* the ·damages; rather, the require-

ment is satisfied if the injury occurred because the vehicle's use is actively *connected* with the injury. *Fire & Cas. Ins. Co. of Conn. v. Ill. Farmers Ins. Co.*, 352 N.W.2d 798, 799 (Minn.App.1984). As noted by the *Klug* court, designation as an active accessory required something more than being the "mere situs of the injury." *Klug*, 415 N.W.2d at 878.

In struggling with the question of when a vehicle is an active accessory and when it is not, courts have denied coverage when, as the mere situs of the injury, the vehicle had nothing to do with the injury itself. In *Allied Mut.*, the claimant, standing a short distance away from the insured vehicle, was struck by an oncoming vehicle as she waited for the insured vehicle to be unlocked. 552 N.W.2d at 562. In denying coverage, the court reasoned that the claimant was not an occupant at the time of injury, and that the vehicle "was simply present: it was parked, unoccupied and unmoving." *Id.* at 564. In contrast to the facts of the case now before us, the *Allied Mut.* court made no indication that the insured vehicle had in any way contributed to the claimant's injuries.

Appellant urges that the result of *Allied Mut.* requires a denial of coverage here because the Explorer, too, was parked and unmoving. While appellant's argument may have superficial persuasiveness, the cessation or absence of movement alone has been held not to preclude coverage. *Kern v. Auto Owners Ins. Co.*, 526 N.W.2d 409, 411 (Minn.App.1995); *see also Medicine Lake Bus Co. v. Smith*, 554 N.W.2d 623, 626 (Minn.App.1996) (finding coverage when bus passenger's injuries resulted from an accidental fall while alighting from the bus, notwithstanding that bus was stationary when the fall occurred).

We conclude that the unique facts of *Allied Mut.* do not compel a similar result under the unique facts of this case. Un-

like respondent here, who was using the vehicle at the time of impact, the claimant in *Allied Mut.* was not making any use of the vehicle at the time of the accident, nor did the vehicle contribute in any way to the injuries. Here, respondent was using the Explorer to load toys, and the bumper of the Explorer was the object against which respondent was pinned.

In *Marklund v. Farm Bureau Mut. Ins. Co.*, 400 N.W.2d 337 (Minn.1987), a case addressing situs, coverage was denied when the claimant slipped and fell on a patch of ice after refueling his vehicle. The court reasoned that all maintenance functions had been completed on the vehicle prior to the time of the claimant's fall, and that the injury had resulted from a premises hazard completely unrelated to the use or repair of the vehicle. *Marklund*, 400 N.W.2d at 340–41. Unlike the claimant in *Marklund*, respondent was still in the process of loading toys into the Explorer and was alighting from the vehicle as she was struck.

In *Tlougan v. Auto-Owners Ins. Co.*, 310 N.W.2d 116 (Minn.1981), another case addressing situs, a five-year-old child sustained burn injuries while playing with matches in a truck. In denying coverage, the court found that while the child was, indeed, an occupant of the truck, and her occupancy was related to use of a motor vehicle as a vehicle, her use of matches in the truck, the act which resulted in injury, had nothing to do with the use of the truck as a motor vehicle as the "cab of the truck was no more than the situs of the match-playing incident." *Tlougan*, 310 N.W.2d at 117. Here, respondent's injuries were sustained, at least in part, when she came in contact with the bumper of the Explorer and thus the vehicle's use was actively "connected" with the injury. Therefore, we conclude that denial of coverage to

respondent on the basis of a "mere situs" rationale would, at best, be questionable.

*State Farm Fire & Cas. Co. v. Strope,* 481 N.W.2d 853 (Minn.App.1992), also involved a vehicle found to be a mere situs of the injury. In that case, a dog had moved onto the floor of the vehicle and become entangled with gun casings. *Strope,* 481 N.W.2d at 854. As the driver placed his hand on the handle of a gun casing, the rifle accidentally discharged and a bullet struck a passenger. *Id.* Noting that "[c]ourts generally require proof of the active involvement of the vehicle and not mere speculation," the court determined that the facts failed to show the truck was " 'actively' involved or played a necessary role in causing the rifle to discharge." *Strope,* 481 N.W.2d at 856; *see also Fire & Cas. Ins. Co. of Conn.,* 352 N.W.2d at 800 (holding that when hunter accidentally shoots his partner near a vehicle, that vehicle is a mere situs of the accident and therefore the accident did not arise out of the maintenance and use of the vehicle).

In reviewing cases where coverage has been found, the active involvement of the vehicle is admittedly more easily identified than here. In *Kern,* the injured party had parked her vehicle in the parking lot of a grocery store. 526 N.W.2d at 410. As she walked toward her vehicle after shopping, she was struck by some insulated siding that blew out of a nearby pickup. The court determined that the pickup was an active accessory to the injury because it was designed to transport materials in the pickup bed; it was a natural and reasonable consequence for materials to blow out of the truck. *Id.* at 412.

Other cases have noted that so long as the vehicle is being used as a motor vehicle during the time of injury, the vehicle is more than a mere situs for the accident. *See, e.g., N. River Ins. Co. v. Dairyland Ins.,* 346 N.W.2d 109, 113–14 (Minn.1984) (finding plaintiff's injury arose from the use or maintenance of motor vehicle when injury occurred from attempt to remove tarpaulin attached to top of trailer); *Galle v. Excalibur Ins. Co.,* 317 N.W.2d 368, 370 (Minn.1982) (finding coverage when plaintiff was injured by part of the vehicle that malfunctioned but denying coverage for two other injuries incurred while lifting heavy objects inside the vehicle); *Van-Guilder v. Allstate Ins. Co.,* 494 N.W.2d 901, 902 (Minn.App.1993) (finding injury that occurs when occupant in moving vehicle is accidentally struck by a rock propelled from a lawn mower arises out of the use of a motor vehicle for purposes of no-fault insurance coverage), *review denied* (Minn. Mar. 16, 1993).

In arguing that the Explorer is not an active accessory, appellant contends that because the Explorer was simply the vehicle against which respondent was pinned, it was nothing more than a passive accessory to the accident and was, therefore, merely the situs of the injury. Appellant relies on *Short v. Midwest Family Mut. Ins. Co.,* 602 N.W.2d 914 (Minn.App.1999), to support the "situs-only" argument. In *Short,* however, coverage was denied not because the injured party was "pinned between vehicles," but because the injured party did not fall under the definition of occupant at the time of injury. 602 N.W.2d at 915. Because the injured party was not an occupant, the court in *Short* never addressed the *Klug* factors.

Similarly, appellant relies on *State Farm Mut. Auto. Ins. Co. v. O'Brien,* 380 F.Supp. 1279 (D.Minn.1974), for the proposition that the vehicle to which an injured person is pinned is only a passive instrument. The decision in *O'Brien,* however, turned on whether the vehicle was being used in a manner contemplated by the statute. Coverage was denied because a six-year-old child's act of turning on the

ignition causing the car to surge backwards and pin the mother against the garage was not "use" for purposes of coverage under the automobile policy. *O'Brien,* 380 F.Supp. at 1282. It is not necessary for this court to answer the "use" question here.

Finally, appellant relies on *Auto-Owners Ins. Co. v. Great W. Cas.,* 695 N.W.2d 646 (Minn.App.2005), *review denied* (Minn. July 19, 2005), to argue that the Explorer was the mere situs of respondent's injury. At first glance, it appears that *Auto-Owners* is analogous to the present case simply because it involved two automobiles and the court applied the *Klug* analysis. In *Auto-Owners,* a vehicle stalled atop an automobile transport trailer. As the injured person attempted to release the stalled vehicle, it rolled backwards, causing the injured person to leap out of the way and wedge his foot between the beams of the automobile transport trailer. *Auto-Owners,* 695 N.W.2d at 647.

The only issue in *Auto-Owners* was which of two insurers would be liable for payment of no-fault insurance benefits. 695 N.W.2d at 648. It was undisputed that the injured person was *not* the driver or occupant of either vehicle at the time of the accident, and therefore the analysis centered on whether the injury resulted from the maintenance or use of the automobile-transport trailer or from the maintenance or use of the stalled vehicle. *Id.* The district court concluded the former. *Id.* This court reversed, concluding that the transport trailer was a mere situs and that the injury "arose out of the 'maintenance or use' of the stalled vehicle," that it was the stalled vehicle being acted upon and it was the "movement of the stalled vehicle itself that caused (the injured person) to jump out of the way and fall between the trailer's beams." *Id.* at 649.

Appellant urges that pursuant to *Auto-Owners,* the vehicle that is, in the tort sense, the direct "cause" of the injury should be the only vehicle liable. There are factors in this case, however, that prompt a different analysis. Further, we are called upon here to answer a question that was not present in *Auto-Owners.* The coverage at issue in *Auto-Owners* was basic economic loss benefits. Here we are concerned with liability coverage on one vehicle (the Betz vehicle) and underinsured motorist coverage on another vehicle (the Explorer), and must answer the question of whether and when and under what circumstances the exhaustion of the former permits invocation of the latter. It is undisputed in this case that damages may exceed the liability limits of the Betz vehicle. There was no discussion in *Auto-Owners* of whether damages exceeded basic economic loss benefit limits and what other insurance might be invoked to cover excess damages. Also, respondent here, unlike the injured person in *Auto-Owners,* has been found to be an occupant of the Explorer and was actively using that vehicle as a motor vehicle at the time of her injury. We conclude that *Auto-Owners* does not compel a decision here similar to that reached in that case.

In the present case, recognizing how very fine are the factual distinctions to be made in deciding the "active accessory" prong of the *Klug* test, we conclude that the involvement of the Explorer was less than proximate cause but more than mere situs, and that it was an active accessory. Being pinned against the bumpers of the Explorer actively contributed to crushing respondent's lower extremities. The hospital admission notes indicate that her "severe bilateral lower extremity injuries [arose] from [car bumpers] when she got caught between two cars ... with [her] legs trapped between." Had the Explorer not been where it was, respondent may

have suffered other injuries, but we do not believe she would have suffered the ones that she did.

### B. Act of Independent Significance

■ The second contested *Klug* factor must also be resolved in respondent's favor if coverage under appellant's policy is to be invoked. Was there an act of independent significance that broke the causal chain? An act of independent significance occurs where an independent tortfeasor intercedes to cause the injury. *See Lindsey v. Sturm*, 436 N.W.2d 788, 790 (Minn.App. 1989) (stating that it is a fundamental principle of tort law that an intentional or criminal act, such as a battery, will break the causal chain because no reasonable standard of care would require a person to be on guard against such acts); *see also Edwards v. State Farm Mut. Auto. Ins. Co.*, 399 N.W.2d 95, 98 (Minn.App.1986) (finding causal chain between injury and use of vehicle broken when victim was raped in automobile), *review denied* (Minn. Mar. 13, 1987); *Wieneke v. Home Mut. Ins. Co.*, 397 N.W.2d 597, 598–99 (Minn. App.1986) (finding independent act where tortfeasor punched claimant inside insured vehicle), *review denied* (Minn. Jan. 21, 1987).

■ In contrast, caselaw instructs that negligent actions are not considered to be acts of independent significance. The supreme court has established that the purpose of UM or UIM is to "protect against the risk that the motorist who injures the purchaser is uninsured (or underinsured) and unable to pay the damages the purchaser is entitled to recover under tort law." *McIntosh v. State Farm Mut. Auto. Ins. Co.*, 488 N.W.2d 476, 479 (Minn.1992); *see also North Star Mut. Ins. Co. v. Carlson*, 442 N.W.2d 848, 855 (Minn.App.1989) (stating that there is no intervening act of independent significance to break the caus-

al link between the car engine fire, the insured's reflexive action of throwing the flaming can, and the can's striking the victim), *review denied* (Minn. Sept. 21, 1989). In other words, notwithstanding Betz's negligence, the purpose of UIM coverage entitles respondent to collect under her own policy the compensation that Betz would have paid if he had been adequately insured. If we adopt appellant's argument that another driver's negligence constitutes an intervening act, we would seriously undermine the purpose and premise of UIM benefits.

The recent case of *Dougherty v. State Farm Mut. Ins. Co.*, 699 N.W.2d 741 (Minn.2005), demonstrates the extent to which a negligent act is not an act of independent significance sufficient to break the causal chain demanded by *Klug*. In *Dougherty*, the driver left a bar after an evening of drinking, attempted to drive a short distance to her home, became stuck in a snowbank, exited the car leaving her hat and gloves still inside, and attempted to walk the remaining 330 feet to her home, using her hands and arms to push through packed snow, slipped and fell on ice, was unable to regain her footing, took refuge near the side of a garage, may have fallen asleep, and sustained severe frostbite. In ruling that the driver's intoxication was not an act of independent significance sufficient to break the causal chain, a four-person majority of the court engaged in an exhaustive review of existing caselaw and reasoned that in the case being addressed "[t]he language of the No–Fault Act does not exclude coverage for drivers whose intoxication caused the accident." *Dougherty*, 699 N.W.2d at 746.

We recognize that the coverage being sought in *Dougherty* was no-fault benefits under Minn.Stat. § 65B.42(1) (2004), and that the coverage being sought here is underinsured motorists benefits. Should a

distinction be made? The dissent in *Dougherty* points to the language of Minn. Stat. § 65B.46 (2004), which indicates that coverage is to be available for injuries "arising out of maintenance or use of a motor vehicle." *Dougherty*, 699 N.W.2d at 747. Thus, even though a question of "fault" (intoxication of the driver) could not be considered in *Dougherty*, and while fault—at least on the part of Betz—is clearly present here, is that distinction sufficient to compel us to conclude that *Dougherty* offers no support to respondent's argument that Betz's act was not sufficient to constitute an act of independent significance breaking the causal chain?

Appellant argues strenuously that Betz's act did break the causal chain. To the extent that appellant relies upon cases involving intentional torts, those cases are distinguishable. It is understandable that the consequences of those intentional torts—at least to the extent those consequences are manifested in invoking uninsured and underinsured motorists' coverage—should not fall upon the motoring public. Here, unquestionably, Betz was negligent. He did not intentionally back his vehicle into respondent. We conclude that to determine that his negligence constituted an act of independent significance would be contradictory to the purpose and policy of the UIM statute, which is to provide the insured (respondent here) with financial protection against an underinsured motorist whose negligence results in injury. *Nygaard v. State Farm Mut. Auto. Ins. Co.*, 301 Minn. 10, 19, 221

N.W.2d 151, 156 (1974); *see also McIntosh*, 488 N.W.2d at 480.

In determining that respondent was an occupant of the Explorer, that the Explorer was an active accessory, and that the negligence of Betz was not an act of independent significance breaking the causal link, we conclude that the purpose of the No-Fault Act, rather than being violated, is being effected.

## DECISION

█ Coverage for injuries sustained during the loading of an automobile is not precluded by the fact that the automobile was stationary at the time of the accident. The victim was an occupant of the vehicle and was in the process of using the vehicle as a motor vehicle at the time of impact. Because the insured automobile directly contributed to the victim's specific injuries, the automobile is more than a mere situs of the accident, but is instead an active accessory. Finally, the tortfeasor's act of impacting respondent and pinning her against the bumper of the insured vehicle is not an act of independent significance breaking the causal chain. Consequently, we affirm the district court's grant of summary judgment to respondent.

**Affirmed.**